HERBERT DONOW *et al.*, Plaintiffs-Appellees, *v.* BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY *et al.*, Defendants-Appellants.

(No. 72-98;

Fifth District—July 23, 1974.

Craig & Craig, of Mt. Vernon, and T. Richard Mager, of Carbondale (A. Ben Mitchell, Howard W. Campbell, and Terry R. Black, of counsel), for appellants.

David W. Watt, Jr., of Murphysboro, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Jackson County in an action brought by the plaintiffs-appellees, 14 members of the faculty and staff of Southern Illinois University, against the defendants-appellants, members of the Board of Trustees of Southern Illinois University, to recover monies withheld from their paychecks by the University allegedly without the authority to do so.

The plaintiffs were all employed by the defendant Board of Trustees as members of the faculty and staff of Southern Illinois University at Carbondale (hereinafter referred to as the University) for the academic year 1969-1970. Their employment was by virtue of individual appointment papers, which contained either the statement: "The employment of a staff member is governed by the laws of Illinois and the Statutes of the Board of Trustees, which laws and statutes are a part of this agreement as if set out in full herein" or: "Employment  *  *  *  will continue until further notice, subject to the policies affecting compensation and conditions of work at Southern Illinois University." Section 8 of "An Act providing for the management, operation, control and maintenance of Southern Illinois University" (Ill. Rev. Stat. 1969, ch. 144, par. 658(1)) grants to the Board the power and in fact the duty "To make rules, regulations and bylaws, not inconsistent with law, for the government and management of Southern Illinois University and its branches." Faculty responsibilities to the University are detailed in part III, article VIII, section 3 of the statutes and bylaws, including the responsibility "To operate within the general framework of University policy and practice."

This suit arose out of the actions by the University administration in retaining a portion of the compensation due plaintiffs for their services rendered on behalf of the University during January of 1971. The University claims the right to withhold portions of faculty and staff salaries as a set-off against the entire salary due the employees on the grounds of a debt allegedly owed to the University by the employees for failure to pay monetary assessments made upon them for claimed violations of the University's Motor Vehicle Regulations. The regulations in question were admitted into evidence and are a part of the record on appeal.

Prior to the action taken by the University, the plaintiffs had collectively accumulated a total of 112 tickets from the University Security Force, each notifying the individual recipient that he was parked in violation of the Motor Vehicle Regulations. The regulations stated that administration of the University parking facilities was to be patterned upon a color-coded decal system whereby the purchaser of a parking decal of a particular color was entitled to park in appropriately color-designated lots as set out in the regulations. Sanctions listed for viola-

tions included monetary assessments for decal infractions of from $1 to $10 per violation, with the assessment of up to $50 available for continuance or serious violations. The tickets issued to the plaintiffs were all for infractions of the rules regarding color decals. Monetary assessments were made in each case for either $1 or $10 by the supervisor of the Motor Vehicle Division of the University Security Force, pursuant to an unwritten policy of the office with regard to the exact assessment to be made for particular types of violations. This was done without the benefit of a hearing as to the validity of the allegations in the ticket, without plaintiffs having any opportunity to challenge the imposition of the assessments before they were made. A procedure for appealing the assessments once made was included in the regulations, and the statutes and bylaws included the right of faculty and staff members to process complaints arising out of their employment through a special grievance procedure. With the exception of James McHose, the plaintiffs failed to use either procedure. Rather they refused to pay the amount of the assessments.

In an attempt to secure payment, the University notified plaintiffs that if they did not pay the amount claimed due by the University, the amount would be deducted from a future paycheck. When this failed to produce the desired compliance, the University did submit to the Auditor of Public Accounts payroll vouchers which noted that the plaintiffs were due an amount less than that stated in their appointment papers. A separate entry on the vouchers under the name of each plaintiff was included for the amount claimed due by the University. The vouchers were approved as prepared, and checks were drawn in compliance with them. Thus plaintiffs received paychecks for an amount equal to their normal salary less the deductions made by the University for the violations. The vouchers were also admitted into evidence.

Plaintiffs, upon receiving the checks for less than their contractual salary, brought this suit to recover the amount retained by the school. The University answered the complaint, raising the affirmative defense that the plaintiffs were indebted and counterclaiming for the amount of the fines as a set-off. The cause was tried by the court sitting without a jury and was tried primarily upon stipulations. The parties agreed by written stipulation prior to trial that the University had adopted, promulgated, published and distributed the Motor Vehicle Regulations in question. The "University" was defined as being the Board of Trustees of Southern Illinois University. Plaintiffs agreed that they had had notice of the regulations at all times relevant to this action. The University stipulated that but for the amounts claimed due for the parking violations, plaintiffs would be entitled to the full amount of their earnings,

except for deductions specifically authorized by each plaintiff and those required by law. It was also stipulated that the defendant has no judgment standing in its favor against any of the plaintiffs, that the defendant had not prior to this action initiated any judicial proceedings against any of the plaintiffs to collect the money allegedly due it, and that the alleged violations of the Motor Vehicle Regulations had never been adjudicated as such by a court of law. Other stipulations were entered by counsel orally during the course of the proceedings and will be referred to as necessary.

At the close of the evidence and after the submission of written briefs by the parties and further oral argument, the court held that the plaintiffs were entitled to recover the amount which had been deducted. The trial judge based his decision on what he described to be a very narrow basis, as he stated in his judgment. He first held that there was no evidence to support the conclusion that the regulations had ever been enacted by the Board of Trustees, despite the stipulation by the parties to that effect. He stated:

> "The testimony was that the Board set some kind of policy and it was never explained what that policy was. I can only assume that the policy that they set was the policy set at the first of this Motor Vehicle Regulation, although that was never shown, no reference—the person said the board set the policy, was made to the defendant's exhibit, and then the particular witness testified that somebody, some unknown person, whether it was the Dean or the President of the University, but somebody drew up the Motor Vehicle Regulations. Now the statutes of this State clearly place the power to make all regulations and rules or the power to lease, make contract of facilities within the sole power of the Board of Trustees of Southern Illinois University and it has not been shown to this court that the Board of Trustees of Southern Illinois University even passed these motor vehicle regulations or ratified them or in any manner knows anything about them."

Next, he ruled that no contract existed and that, even if a contract did exist, it was vague and unclear, in that a person would not know how much he would have to pay for parking on campus, due to the variable assessment scale of $1 to $10 in the regulations and the possibility of assessments up to $50 for serious violations or continued violations. A further area of fault was found with the procedure for making the assessments in that the supervisor of the Motor Vehicle Division made the assessments in the $1 to $10 range pursuant to an unwritten policy which he had helped draw up. The supervisor's testimony further produced the fact that he himself was not sure if he had the authority

to make the assessments, but that someone had to do it. Finally the court ruled that the University had no right to set-off the wages since the University is governed by, and all of its power arises from, the statutes setting it up, wherein there is no mention of the right to set-off accruing to the University, and since section 1 of "An Act in relation to uncollected claims and accounts receivable of State agencies" (Ill. Rev. Stat. 1969, ch. 15, par. 101) provides a procedure which should have been used by the University.

No formal objection was filed to the judgment nor was a post-trial motion filed by the defendants.

The first issue presented on this appeal is whether the trial court was correct in disregarding the plain wording of the stipulation of the parties and in ruling that the Motor Vehicle Regulations were not in effect during the times concerned due to lack of proper promulgation. Appellees raise the question of whether this issue has been preserved for appeal in light of the fact that no objection was made to the ruling at the time it was made, and no post-trial motion was filed calling this problem to the attention of the court.

■■ As noted in the facts above, this cause was tried by the court sitting without a jury. The ruling in question was made as part of the justification the trial court gave for its decision and was made after the submission of written briefs by the parties and oral arguments thereon. After taking the case under advisement for a time, the court issued its judgment, including the ruling appealed from. Under the circumstances it was not necessary for the defense counsel to object to the judgment nor to file a post-trial motion to save the question for appeal. (Ill. Rev. Stat. 1969, ch. 110, par. 68.3(1).) See also, *City of Evanston v. Piotrowicz*, 20 Ill.2d 512, 515, 170 N.E.2d 569, 572. The appellant did not waive the right to raise this question on appeal, and it is properly preserved.

■■ From this record we determine that the trial court erred in ignoring the stipulation when delivering its judgment. However, since this action by the trial court occurred after the submission of written briefs by the parties and after the presentation of all the evidence in the case, we cannot hold that it is automatically reversible error. Due to the time at which the holding was made, neither party was harmed in the presentation of their evidence. Both parties proceeded as if the stipulation were in effect so the record we have before us is one untainted by the ruling on the stipulation. As we now hold that the stipulation was valid and binding, neither party can claim they were prejudiced in the presentation of evidence by the ruling. We can now proceed to an examination of the actual dispute involved. We are not bound by

the reasons given by the trial court for its decision. (*Klarich v. Parker*, 325 Ill.App. 571, 60 N.E.2d 248.) Therefore, if we find from the record a sufficient basis in law upon which to support the judgment we will affirm (*City of Kankakee v. Small*, 317 Ill. 55, 147 N.E. 404; *Troup v. Hunter*, 300 Ill. 110, 133 N.E. 56), and we will disregard the erroneous reasons of the trial court for its decision. *Fields v. Berg*, 333 Ill.App. 46, 76 N.E.2d 554; *McNicholas v. Tinsler*, 127 Ill.App. 381.

The basic issue for resolution in this case is whether the defendant Board of Trustees of Southern Illinois University, a public educational institution organized under the laws of Illinois, can withhold from the paychecks of its faculty and staff members amounts claimed due to the University by reason of the employees' failure to pay monetary assessments levied upon them by the University for alleged violations of the University Motor Vehicle Regulations. The deductions from the paychecks were not authorized by the employees in the normal manner and were made without their permission.

At the outset it must be noted that very little law is to be found on the subject. This is due in part to the unique question presented and the unusual status of the employer-board, in that it is a public corporation organized by the legislature of the State of Illinois (Ill. Rev. Stat. 1969, ch. 144, par. 651, *et seq.*). Therefore we are forced to approach the problem with little help from prior cases.

The first matter with which we must concern ourselves is the existence of a contract of employment between the plaintiffs and the Board. The trial judge ruled that a contract did not exist or that if it did exist it was too vague to be enforceable. We take exception with his determination that no contract of employment existed between the Board and the employees here.

■■  The statutes authorizing the existence of the Board of Trustees are the first source to be consulted in order to determine whether a contract exists. Section 12 of "An Act in relation to Southern Illinois University" (Ill. Rev. Stat. 1969, ch. 144, par. 612) states that the Board "shall *appoint* instructors, and any such officers as may be required." (Emphasis ours).) While the term "appoint" may be ambiguous, we believe that the legislature envisioned a contractual relationship between the employees and the Board. In enumerating the powers of the Board, section 8 of "An Act providing for the management, operation, control and maintenance of Southern Illinois University" (Ill. Rev. Stat. 1969, ch. 144, par. 658) states in part the power to "employ" all necessary personnel and the power to "contract with them upon matters relating to tenure, salaries and retirement benefits in accordance with 'An Act to create the university civil service system of Illinois and to define its powers and duties',

approved May 11, 1905, as amended." The plain meaning of this section indicates that the contractual arrangements in the employment contract relating to the enumerated areas are to be governed by the named statute. The inference to be drawn is that the employment relationship is a contractual relationship. We hold that it is such.

Once the existence of the contract has been established, there remains the duty of determining the scope of that contract, especially as it affects the regulations. The defendants' approach in both the trial court and more evidently on appeal is that this is basically a contract action. This was evident to the trial judge who ruled that the defendants had waived the right to sue in tort or in a quasi-criminal action on their counter-claim. While originally agreeing with the trial judge that there was no contract, plaintiffs state in their brief that it has always been their position that the only remedy defendants could pursue would be an action for damages resulting from a breach of contract. Our interpretation of the agreement coincides with the apparent intentions of the parties. We thus hold that the Motor Vehicle Regulations were a part of the contract of employment between the plaintiffs and the defendants.

The next question to be decided is whether the University had the right under the contract to retain the amounts which they did. For the time being we shall assume the assessments to be valid under the circumstances and will concern ourselves only with the right of retention from the paychecks.

An examination discloses that nowhere in the creating statutes, in the regulations, or in the appointing papers is there any specific grant of authority given to the Board to authorize such deductions as were made here. Since the powers of the Board are limited by the statute creating it, by its regulations, or by the contract, they have no power to take such action. The defendants, however, argue that the statutes should be given a liberal interpretation in light of the fact that the statute grants very broad powers to the Board and much discretion in the making of rules and regulations so long as they are not inconsistent with law. (Ill. Rev. Stat. 1969, ch. 144, par. 658(1).) While we agree that the statute should be liberally applied by the courts, we feel that to sanction this action as a statutory power would be contrary to the intent of the legislature in granting this wide range of powers. To allow the Board to deduct from salaries as debts owed to the University, amounts adjudged as "debts," not by any impartial judicial forum but by an internal administrative action, would be to allow them a discretion in dealing with their employees not sanctioned in law. Nothing in the statutes indicates that the legislature intended that they should have a power of this type. If the Board were given this power, the employee

would not know how much of his pay he could expect to receive until the paycheck was actually received. The University could conceivably deduct any amounts which it had internally decided were debts owed to it and thus place its employees in severe financial difficulties. Cases cited by the defendants to the effect that the courts will not interfere with the internal procedures of a university are inapplicable here, since the plaintiffs are being deprived of their salaries, which the defendants stipulated they were due were it not for the assessments made, without having the right to have the assessments officially adjudged debts of the University by an impartial judicial forum. The statutes do not authorize such action.

■■ Further, the plaintiffs had never consented to the deductions, according to the testimony of the assistant to the president of the University, and they had never signed authorizations for deductions, as was the normal procedure prior to the making of any deduction by the University. He knew of no other instance in which this particular method of enforcement had been applied. Also, the regulations themselves do not authorize the retention of salaries as a means of enforcement. Access to the State courts is listed as a possible means of enforcement, but no provisions exist for a set-off to salaries. The regulations state that the methods of enforcement are not limited to those listed, but this does not help the defendants. The set-off by defendants could not be used to collect the assessments made on these particular violations because the plaintiffs did not have notice of this enforcement method at the time of the violations. A case cited by the appellants is appropriate in its reasoning on this point. In *Drysdale v. University of New York*, 60 Misc. 2d 180, 302 N.Y.S.2d 882 (Sup. Ct. 1969), the plaintiff sought an injunction against the university to enjoin it from towing and impounding motor vehicles of students for failure to pay summonses issued for parking violations on campus. The regulations included authority to tow and impound cars parked illegally at the time of the towing, but contained nothing about the towing of cars for past violations. The court refused to grant the injunction against the towing of cars parked illegally when towed, but granted the injunction against the towing and impounding of cars for past violations as this was not an enforcement method included in the regulations. Here the attempted enforcement was not included in the regulations either at the time of the violations or at the time it was used. Similarly, in the present case defendants had no authority under the regulations to deduct the amounts which they did.

Thus the plaintiffs are correct in asserting that the defendants acted illegally in deducting the assessments from their salaries. But this does not dispose of the case entirely. Should defendants be entitled to the

recovery they seek on their counterclaim, which the trial court interpreted as a second affirmative defense, the judgment must be reversed. It is to this question that we now turn.

The defendants are entitled to plead a counterclaim pursuant to section 38 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 38). In passing on the merits we must keep in mind the fact that the regulations are considered a part of the contract. When considered in this manner, as between the employees and the Board, the assessment section of the regulations becomes a damages section for this part of the contract. The regulations state that the defendants have the right to make monetary assessments for violations of the regulations. When seen in the contract context this would give them the right to determine the amount of damages due them for a breach of the regulations by an employee.

■■ Appellants argue that the plaintiffs agreed to the $1 to $10 range of assessments for decal violations when they entered into the employment situation. But since this has been shown to be a damages section we must inquire if the parties may agree to such damages in advance of breach. An argument can be made that the assessments are liquidated damages, on the ground that actual damages resulting from a breach would be difficult to determine. (*Burnett v. Nolen,* 336 Ill.App. 376, 84 N.E.2d 155.) However, there are several weaknesses to that approach in this case. First, there is no sum certain stipulated for specific offenses. The supervisor of the Motor Vehicle Division testified he made the assessments in the prescribed range pursuant to an unwritten policy which he had helped formulate. Liquidated damages must generally be for a sum certain for a specified breach. (25 C.J.S. *Damages* § 101 (1966).) Secondly, liquidated damages are usually considered to be paid in lieu of performance and are not specifically intended to secure performance of the provisions. (25 C.J.S. *Damages* § 101(c) (1966).) In this case the scale for assessments is listed in a section of the regulations captioned "Sanctions," which are obviously intended to be a warning to secure observance of the regulations.

■■ Under the circumstances here present the assessments section is the equivalent to a penalty clause. The courts of Illinois lean toward this construction of provisions of this sort in contracts which exclude the idea of liquidated damages and rather treat such clauses as penalties which will not be enforced, the aggrieved party being able to recover actual damages only. (*Giesecke v. Cullerton,* 280 Ill. 510, 117 N.E. 777; *Advance Amusement Co. v. Franke,* 268 Ill. 579, 109 N.E. 471.) If the clause was inserted primarily to secure prompt performance of the agreement, it will be treated as a penalty. (*Scofield v. Tompkins,* 95 Ill. 190.) If the exact nature is doubtful it is the trend to consider it as a penalty.

(*Bauer v. Sawyer*, 6 Ill.App.2d 178, 126 N.E.2d 844.) See Restatement of Contracts § 339 (1932). In this case, no evidence of actual damages to the University was presented to the court. Since no actual damage was shown, defendants cannot recover on their counterclaim, and they are not entitled to the set-off. *County of Mercer v. Stupp Bros. Bridge & Iron Co.*, 115 Ill.App. 298.

It must again be noted that this decision is based upon the contractual relationship of the parties. We do not at this time make any judgment as to the right of the University to collect monetary assessments from students and others with whom it does not have such contracts.

For the foregoing reasons, the judgment appealed from must be affirmed.

G. MORAN, P. J., and CREBS, J., concur.