BUILDER'S CONCRETE CO. OF MORTON, Plaintiff-Appellee and Cross-Appellant, *v.* FRED FAUBEL AND SONS, INC., Defendant-Appellant and Cross-Appellee.

Third District    No. 77-187

Opinion filed March 13, 1978.

Bradley W. Swearingen, of Moehle, Reardon, Smith & Day, Ltd., of Washington, for appellant.

John M. Ritchie, of Pekin, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Plaintiff, Builder's Concrete Co. of Morton, brought this breach of contract action against defendant, Fred Faubel and Sons, Inc., to recover unpaid rent and the cost of repairing certain vehicles which plaintiff leased to defendant under a written agreement. Defendant counterclaimed seeking liquidated damages for plaintiff's refusal to convey the property under an option to purchase clause. After a bench trial the Circuit Court of Tazewell County denied plaintiff's claim for unpaid rent, but awarded plaintiff the costs of repair. Defendant's counterclaim was denied. Cross-appeals are taken from the trial court's rulings.

The basic facts of the case are not in dispute. On August 1, 1974, plaintiff Builders, and defendant Faubel, entered into a written contract whereby plaintiff agreed to lease to defendant a number of trucks, a truck shed and various other pieces of equipment for use in defendant's ready-mix concrete business. The specified duration of the lease was one year with defendant to make payments of $8,500 on August 1, and a like sum on the first day of each succeeding month. The parties agreed that the fair rental value of the property was $3,500 monthly and the additional $5,000 was to be paid to prevent repossession of the property by plaintiff's secured creditors. Included in the contract was an option to purchase clause under which defendant, upon proper notice to plaintiff, could elect to purchase the leased property and apply 58.82% ($5,000) of each rent payment toward the purchase price. It was further provided that should plaintiff, after demand, refuse to convey the property, defendant would be entitled to liquidated damages amounting to 58.82% of the total payments made. Terms of the agreement required defendant to provide full maintenance and insurance coverage on the leased vehicles. The lease, which was prepared by defendant, made time of the essence and provided that upon default by the lessee, the lessor was to recover as liquidated damages 50% of the rent due during the unexpired tenure of the agreement.

Defendant was late with each of its first four monthly payments; the August payment was made on September 30, the September and October payments on October 10 and the November payment on November 4. Each payment was accepted by plaintiff when tendered. An insurance premium on the vehicles was due in October. Defendant did not pay the premium, but the agent who supplied the insurance did, based on defendant's guarantee that the payment would be forthcoming. At no time during the life of the lease was the property uninsured. On

November 26, 1974, defendant received a letter from plaintiff which stated:

> "Based on recent management decisions by your company, Builders Concrete and Material, Inc. refuses to transfer any assets to your company, Fred Faubel & Sons, Inc."

The letter further demanded that defendant return all of the leased property to plaintiff's Morton location by December 31, 1974. On December 5, defendant tendered its December rent which was accepted by plaintiff. Defendant also paid the October insurance premium and on December 31, complied with plaintiff's demand by returning all of the leased property to plaintiff's place of business in Morton.

Plaintiff initiated the instant action in January 1976, alleging that defendant breached the contract by failing to make timely rent and insurance premium payments. Plaintiff sought liquidated damages totaling 50% of the unpaid rent as well as $1,650 as the costs of repairing two vehicles which it claimed were inoperable when returned by defendant. Defendant denied breaching the contract and counterclaimed to recover 58.82% of the money it had paid plaintiff as liquidated damages for plaintiff's refusal to convey the property. The trial court found that defendant did not breach the contract and denied plaintiff's claim for unpaid rent. However, defendant's counterclaim was also denied on the grounds the defendant did not demand conveyance of the property after receiving plaintiff's November 26 letter. Plaintiff was allowed to recover $1,461.57 as the costs of repairing two of the leased vehicles. On appeal, each party contests the denial of its claim for liquidated damages and defendant also challenges the award of costs of repair to plaintiff.

We must first determine the effect of plaintiff's November 26 letter to defendant in which plaintiff disclaimed any intention of conveying the leased property and demanded that defendant return same to plaintiff by December 31, 1974. Plaintiff contends the letter was a justified rescission of the agreement based on defendant's breaches of contract. Cited as breaches justifying rescission are defendant's tardiness in making the first four rent payments and defendant's failure to pay the October insurance premium. Plaintiff's argument places particular emphasis on the contract provision making time of the essence. Defendant, on the other hand, denies being in breach of contract and claims that plaintiff's letter constituted an anticipatory repudiation by plaintiff of its contractual duties. Defendant notes that all rent was paid up to date on November 26, and the property was fully insured.

■■ It is well established that a party may terminate or rescind a contract because of substantial nonperformance or breach by the other party. (*Forest Preserve Real Estate Improvement Corp. v. Miller* (1942), 379 Ill. 375, 41 N.E.2d 526.) The determination of what constitutes

substantial nonperformance justifying rescission is for the trier of fact. (*Sampson v. Marra* (2d Dist. 1951), 343 Ill. App. 245, 98 N.E.2d 523.) The trial judge in this case, sitting without a jury, determined that defendant was not in breach of contract on November 26, and we see no reason to disturb that determination. By accepting the late rent payments, plaintiff waived any objection to their tardiness. (*Cottrell v. Gerson* (1939), 371 Ill. 174, 20 N.E.2d 74.) This is true notwithstanding the contract clause making time of the essence. (12 Ill. L. & Prac. *Contracts* §412 (1955).) Furthermore, defendant's failure to make timely payment of the October insurance premium need not be considered as a substantial nonperformance of its contractual obligation since defendant did guarantee payment, and the property remained fully insured. This arrangement may not have met the precise expectations of the parties to the contract, but it did fulfill the parties' mutual goal of protecting the leased property. It was not error for the trial court to find that defendant sufficiently performed its part of the bargain, and to deny plaintiff's claim for unpaid rent.

■■ Having determined that defendant did not breach the contract, the next question is whether plaintiff breached the contract by renouncing its duty to convey the leased property. Defendant contends plaintiff's November 26 renunciation was an anticipatory repudiation and that, when acted upon by defendant on December 31, the repudiation became a breach of contract by plaintiff. We agree. Unless justified, a definite statement to the promissee that the promissor will not perform its contractual duties constitutes an anticipatory repudiation. (*Stonecipher v. Pillatsch* (2d Dist. 1975), 30 Ill. App. 3d 140, 332 N.E.2d 151.) Under the option to purchase clause of the agreement, plaintiff clearly had a duty to convey the leased property to defendant if defendant so requested. Plaintiff's letter of November 26 contained a definite and unequivocal statement that plaintiff would not comply with the terms of the contract granting defendant an option to purchase. It further demanded that defendant return the leased property to plaintiff by a specified date. We have already determined that plaintiff's action was not justified by defendant's nonperformance or breach of contract. Thus, plaintiff's November 26 letter constituted an anticipatory repudiation of its duties under the contract.

■■ Upon receiving an anticipatory repudiation by the promissor, the promissee has a choice of pursuing three alternative remedies. The promissee may (1) rescind the contract and seek quasi-contractual relief; (2) attempt to keep the contract in force by awaiting time for the promissor's performance and then bringing suit; or (3) elect to treat the repudiation as a breach putting an end to the contract for all purposes of performance. (*Lake Shore & Michigan Southern Ry. Co. v. Richards*

(1894), 152 Ill. 59, 38 N.E. 493.) The promissee may evince his election to treat the repudiation as a breach by either promptly filing suit or by detrimentally changing his position in reliance on the repudiation. (17 Am. Jur. 2d *Contracts* §456 (1964).) In the instant case, defendant chose to follow the latter course. Complying with plaintiff's demand, defendant relinquished its rightful possession of the leased property to plaintiff on December 31, 1974. By so doing defendant manifested its decision to treat the contract as ended and thereby put plaintiff in breach of contract. Plaintiff contends that even if its repudiation was unjustified, failure of defendant to object to the repudiation and defendant's acquiescence in returning the property caused the contract to be rescinded by mutual assent. We do not agree.

"A continued willingness upon the part of the injured party to receive performance is an indication that, if the repudiator will withdraw his repudiation, but not otherwise, the contract may proceed. It is not an irrevocable election not to treat the renunciation as a breach." (*Bu-Vi-Bar Petroleum Corp. v. Krow* (10th Cir. 1930), 40 F.2d 488, 492; Williston on Contracts §1334 (3d ed. 1968).)

Defendant was not required to object or to attempt to keep the contract in force. Plaintiff stated unequivocally that it would not fulfill its part of the bargain and defendant was justified in taking plaintiff at its word. (Restatement of Contracts §306, comment a (1932).) An anticipatory repudiation continues in effect until affirmatively retracted by the repudiator. (Restatement of Contracts §320, comment a (1932).) Plaintiff's theory would allow a party to announce repudiation of its contractual duty and then be held blameless unless the other party objected and attempted to change repudiating party's mind. Such is not the law. As noted above, upon receiving plaintiff's November 26 repudiation, defendant had an option of objecting and attempting to keep the contract in force or treating the repudiation as a breach ending the contract. Defendant was not required to pursue both options nor was it required to raise objection before treating the contract as ended. (*Lake Shore*.) Defendant properly treated the contract as ended and plaintiff was placed in breach of contract on December 31, 1974.

On cross-appeal defendant asserts that the trial court erred when it denied defendant's counterclaim for liquidated damages because defendant did not make a demand for conveyance of the property after receiving plaintiff's November 26 letter. Under the contract's liquidated damages provision, a demand for conveyance by defendant and a refusal by plaintiff were clearly conditions precedent to defendant's right of recovery. Plaintiff claims that some affirmative act by defendant was required before defendant's right to recovery under the liquidated

damages clause could be perfected, but defendant, on the contrary, contends that the necessity of complying with the condition precedent of demand and refusal was obviated by plaintiff's anticipatory repudiation of its duty to convey. Defendant argues that its right to damages accrued immediately upon returning the leased property to plaintiff and electing to treat plaintiff's repudiation as a breach of contract. According to defendant's theory, no other affirmative act of demand was required of it.

■■ We agree with defendant. When one party to a contract repudiates his contractual duties before time for performance the other party may elect to treat the contract as ended. In such cases the nonbreaching party is not required to tender performance or to comply with conditions precedent. (*Stonecipher v. Pillatsch* (2d Dist. 1975), 30 Ill. App. 3d 140, 332 N.E.2d 151.) The rule is well stated in 17 Am. Jur. 2d *Contracts* §449 (1964):

> "Nearly all the courts considering the question have reached the conclusion that a renunciation or repudiation of a contract before the time for performance, which amounts to a refusal to perform it at any time, gives the adverse party the option to treat the entire contract as broken and to sue immediately for damages as for a total breach. There is no necessity in such case for a tender performance, or compliance with conditions precedent, or waiting for the time of performance to arrive, although this is optional."

In essence, the repudiating promissor excuses the promissee from fulfilling the condition precedent. (11 Williston on Contracts §§1319, 1337 (3d ed. 1968).) The wisdom of this rule is evident when considered in conjunction with the basic legal tenet that the law never requires a useless act. (*Christopher v. West* (1951), 409 Ill. 131, 98 N.E.2d 722; *Mead v. Chicago & Northwestern Ry. Co.* (1st Dist. 1914), 189 Ill. App. 323.) Since plaintiff unambiguously refused to convey the property to defendant, requiring defendant to demand conveyance would be requiring defendant to engage in a useless act. (Restatement of Contracts §306, comment a (1932).) Defendant was justified in believing that its request for conveyance would be futile. The nugatory demand was excused and plaintiff cannot take advantage of its nonperformance. (11 Williston on Contracts §1319 (3d ed. 1968).) The trial court's denial of defendant's counterclaim was error and is reversed.

Furthermore, we believe defendant is entitled to recover liquidated damages as provided in the lease agreement. By denying defendant's counterclaim, the trial court did not have an opportunity to consider the appropriateness of the liquidated damages provision. However, we have considered the provision and we find the stipulated damages found

therein to be appropriate relief for the injuries suffered by defendant as the result of plaintiff's breach.

■■ A predetermined damages clause will be given effect if actual damages are difficult to ascertain and the liquidated damages clause is a reasonable estimate of the damages which would actually result from a breach of contract. (*Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 134 N.E.2d 329.) The damages provided must be a specified amount for a specific breach to be paid as an alternative to performance and not as a penalty for nonperformance. (*Donow v. Board of Trustees* (5th Dist. 1974), 21 Ill. App. 3d 139, 314 N.E.2d 704.) In the present case the liquidated damages provision provided that defendant should recover a specified amount, 58.82% of all payments made, for a specific breach, plaintiff's refusal to convey the leased property under the contract's option to purchase clause. Given the large number of items involved, the diverse nature of those items and the extended time period (one year) during which defendant could exercise its option to purchase, it is fair to conclude that potential damages sufferable by defendant upon plaintiff's breach were difficult to ascertain at the time of contracting. Moreover, the stipulated amount of damages found in the liquidated damages clause is a reasonable estimate of the direct harm which defendant would suffer if plaintiff refused to convey the property in question. This amount of damages agreed to corresponds to that portion of each monthly payment above the fair rental value which was paid by defendant to prevent repossession of the leased equipment by plaintiff's secured creditors. In effect, the additional $5,000 per month paid by defendant was a "down payment" on the purchase price of the property. Justice requires that defendant recover that "down payment" upon plaintiff's refusal to allow defendant to purchase the property. The contract's damages provision fairly compensates defendant for its loss and does not unduly penalize plaintiff for its breach. The trial court is directed to enter judgment for defendant on defendant's counterclaim in the amount stipulated to in the contract's liquidated damages provision.

Finally, defendant contends the trial court erred in awarding plaintiff the cost of repairing two vehicles which plaintiff claimed were inoperable when returned by defendant. The contract clearly made defendant responsible for maintenance on the vehicles during the tenure of the lease, and defendant concedes that had the contract run its full term, without defendant exercising the option to purchase, the property should have been returned to plaintiff in good working order. Evidence was offered that defendant's employees properly maintained the vehicles during the tenure of the lease, but were unable to complete certain repairs in progress by December 31, 1974, the date by which plaintiff demanded

return of the property. Although defendant returned the property in December 1974, plaintiff did not have the vehicles repaired until April or May 1976.

■■ ■ As previously noted, when a party bound by an executory contract repudiates its obligation before time for performance, the other party has the right to treat the contract as ended so far as further performance on its part is concerned. (See *Lake Shore v. Richards; Stonecipher v. Pillatsch;* 11 Williston on Contracts §1337 (3d ed. 1968); 17 Am. Jur. 2d *Contracts* §449 (1964).) The innocent party is excused from rendering further performance under the contract until the repudiating party retracts its repudiation or the innocent party evinces its election to treat the repudiation as a breach. (Restatement of Contracts §320 (1932).) In the case at bar, plaintiff repudiated its obligations under the contract on November 26, 1974, and from that time on defendant was excused from further performance of its contractual duties, including its duty to repair the leased vehicles. Furthermore, defendant's return of the property on December 31, 1974, ended the contract with plaintiff in material breach.

> "Where a party has materially breached a contract, he cannot take advantage of the terms of the contract which benefit him nor recover damages from the other party * * *." (*Robinhorne v. Snyder* (4th Dist. 1969), 113 Ill. App. 2d 288, 297, 251 N.E.2d 641, 645, 646.)

The award of costs of repair to plaintiff was error and is reversed.

For the foregoing reasons, the judgment of the Circuit Court of Tazewell County is affirmed in part and reversed in part. That portion of the judgment denying plaintiff's claim for unpaid rent is affirmed. Those portions of the judgment denying defendant's counterclaim and awarding plaintiff costs of repair are reversed. The trial court is hereby directed to enter judgment for defendant on defendant's counterclaim and to award defendant damages as provided in the liquidated damage clause of the contract.

Affirmed in part, reversed in part, and remanded with directions.

BARRY and SCOTT, JJ., concur.