2018 IL App (2d) 170418
No. 2-17-0418
Opinion filed October 15, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF KANE COUNTY, ILLINOIS, for Order of Judgment and Sale Against Real Estate Returned Delinquent For the Nonpayment of General Taxes for the Year 2011 and Prior Years | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| | ) ) | No. 15-TX-156 |
| (Samuel N. Velasquez, Petitioner-Appellee, v. Downer Place Holdings, LLC, Respondent-Appellant). | ) ) ) ) | Honorable Mary Katherine Moran, Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Hudson and Justice Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1 The circuit court of Kane County issued a tax deed for the property located at 40-46 West Downer Place, Aurora (Property), to the petitioner, Samuel N. Velasquez, over the objections of the respondent, Downer Place Holdings, LLC (DPH). DPH appeals, arguing that Illinois law bars Velasquez from obtaining the tax deed, because he held an interest in the Property. We find that he had no interest that would prevent issuance of the tax deed to him and affirm the judgment.

¶ 2                                  I. BACKGROUND

¶ 3    The Property is a two-story multi-unit commercial property that is zoned for mixed use. In October 2012, the 2011 property taxes on the Property, which had not been paid, were sold to MTAG, identified as the custodian for Alterna Funding 1, LLC (collectively, Alterna). After extensions, the final date for any redemption of the taxes was October 28, 2015.

¶ 4    In 2013, the ownership of the Property was transferred to a land trust, the beneficiary of which was DPH. James B. Liggett was the sole owner of DPH. The trustee for the land trust was Standard Bank and Trust Company.

¶ 5    In April 2014, DPH leased one of the units at the Property to Velasquez and his wife, Katie, to operate a wedding services business. The lease provided that, in addition to rent, the Velasquezes would pay for the unit's gas and electric service. The lease did not require them to pay for property insurance, property taxes, or water.

¶ 6    Over the years, various mechanic's liens were filed against the Property, and in 2014 a foreclosure suit involving the Property was filed. Trial was scheduled for May 7, 2015.

¶ 7    Shortly before then, Velasquez and DPH began negotiations over a possible transfer to the Velasquezes of some of DPH's interest in the Property. On May 5, 2015, Velasquez and DPH entered into a "trust share purchase agreement" (Agreement). The Agreement identified Liggett—as "managing member" of the land trust that owned the Property—as the seller and the Velasquezes as the buyers. Under the Agreement, the Velasquezes were to obtain a 51% interest in DPH in return for paying $51,000 to DPH by October 27, 2015. The Agreement stated that Velasquez "pledged by this document" that the 2011 taxes on the Property would "be paid in full no later than October 27th 2015" and that Velasquez would "become the Managing Member upon completion of full payment by or before October 27th 2015." Further, the parties agreed that Velasquez would pay off the mechanic's liens against the Property. (Although this condition does not appear in the written contract, both parties have agreed throughout this

litigation that the condition was a part of the Agreement.) The Agreement was signed by Liggett and Velasquez. That same day, Velasquez paid $23,000 to settle the foreclosure case involving the mechanic's liens. On May 7, 2015, the foreclosure case was dismissed.

¶ 8 On May 13, Liggett (as "manager" of DPH) executed a form assignment of 51% of DPH's interest in the land trust to the Velasquezes. However, the assignment contained a limiting clause: "This assignment shall not be binding on the Trustee unless and until the original thereof is lodged with the Trustee and its acceptance indicated thereon." It is undisputed that the trustee took no action with respect to the assignment, and neither party argues that it ever became effective.

¶ 9 On May 18, both Liggett and Velasquez signed a 30-day notice terminating the tenancy of one of the other tenants at the Property. However, about this time, the relationship between Liggett and Velasquez began to deteriorate. On May 29, DPH's attorney circulated a notice to all of the tenants at the Property, advising them that Liggett was "still the managing member for the ownership of the building" and that the tenant named in the 30-day notice was the building manager. Nevertheless, on June 1, Velasquez paid one installment of the 2014 property taxes on the Property, in the amount of $2028.29.

¶ 10 On June 2, an attorney representing Liggett and the trustee wrote the Velasquezes, informing them that Liggett "elects to and hereby does terminate" the Agreement and that they should "consider this Agreement as null, void and of no legal effect." On June 11, Liggett (on behalf of DPH) served the Velasquezes with a 10-day notice terminating their tenancy at the Property. On June 23, the attorney for Liggett and the trustee wrote Velasquez's attorney regarding the 10-day notice. That letter stated that there were "no existing agreements in force other than the lease agreement." The letter further stated that the Velasquezes "never acquired

more than a possessory interest in the property" and that the Agreement "was terminated some time ago in writing."

¶ 11 In early July 2015, DPH filed a forcible detainer (eviction) complaint against the Velasquezes. The Velasquezes filed an answer that included an affirmative defense and counterclaims for specific performance of the Agreement and for misrepresentation. The affirmative defense alleged that DPH had induced Velasquez to enter into the Agreement and to pay off the mechanic's liens and the current property tax bill, thereby unjustly enriching DPH, and thus no rent was due. The counterclaim for specific performance alleged that Velasquez had partially performed their obligations under the Agreement and were willing to complete their performance if DPH were required to proceed with the Agreement. The misrepresentation counterclaim alleged that, although DPH had promised to convey 51% of its interest in the Property, it never intended to perform this promise but instead always intended to revoke the Agreement without refunding any of Velasquez's payments on DPH's behalf, as in fact it did. The outcome of the eviction action does not appear in the record on appeal. Although the Velasquezes' occupancy at the Property appears to have continued, the record does not contain evidence documenting the nature of that occupancy.

¶ 12 On July 16, 2015, Alterna filed a petition for a tax deed for the Property, alleging that the time to redeem the taxes would expire on October 28, 2015, and that no one had yet done so. Paragraphs 1 through 5 of the petition alleged that all of the conditions for issuance of a tax deed had been met, and the relief sought was the issuance of such a deed once the redemption period expired. On October 6, 2015, Velasquez bought the tax-sale certificate from Alterna. No one redeemed the taxes by October 28, 2015. On November 24, 2015, Velasquez was substituted for Alterna as the petitioner in the tax-deed proceeding.

¶ 13    In April 2016, DPH filed an answer in which it argued that Velasquez should not receive a tax deed because he had breached the Agreement, had unclean hands, and was subject to promissory and judicial estoppel.   That answer was stricken by agreement.   In October 2016, DPH filed a new answer.   It admitted the allegations of paragraphs 1 through 5 of the petition but asserted the affirmative defense of fraud, alleging that Velasquez induced DPH to enter into the Agreement by promising to redeem the 2011 taxes on the Property but then failed to do so.

¶ 14    In November 2016, Velasquez moved for summary judgment.   He noted that all of the legal requirements for issuance of the tax deed had been met through DPH's admissions of the first five paragraphs of the petition for tax deed, and he argued that, in light of DPH's June 2015 anticipatory repudiation of the Agreement, DPH could not sustain its affirmative defense of fraud.   He attached as exhibits copies of the letters dated June 2 and 23, 2015, terminating and confirming the termination of the Agreement.   DPH's response to the motion did not refute or even address the evidence of anticipatory repudiation, instead arguing that fraud in the inducement was a permissible defense to a tax-deed petition under section 22-45 of the Property Tax Code (Code) (35 ILCS 200/22-45 (West 2014)) and that DPH had asserted this defense. DPH also attached an affidavit by Liggett describing the Agreement and charging that it was "an artifice of fraud concocted by *** Velasquez to deprive [DPH] of its value in the Subject Property."

¶ 15    On December 20, 2016, the trial court heard argument on the motion for summary judgment.   The record does not contain any transcript or other record of that hearing.   The order entered that day stated:

> "[T]he court having reviewed the briefs, pleadings and oral argument of the
> parties, it is hereby ordered that petitioner's motion for summary judgment is granted as

to [the] affirmative defense of fraud. The court finds that there is no issue of material fact regarding fraud in procurement of the tax deed."

The order continued the case for prove-up on January 10, 2017.

¶ 16    On January 10, 2017, Velasquez and DPH appeared through their attorneys, and Velasquez filed an application for an order directing the issuance of a tax deed. A wrinkle arose when Velasquez's attorney informed the court that outside the courtroom he had met John Grafft, who claimed to be the record owner of the Property. Grafft produced a deed recorded on December 29, 2016, conveying the Property to Grafft from a land trust held at the State Bank of Geneva (Geneva bank). Velasquez's attorney stated that, in researching the title to the Property for the prove-up, he had discovered that, in September 2015, the trustee of the land trust that owned the Property had conveyed the deed to the Geneva bank land trust, which in turn conveyed it to Grafft. The attorney did not know whether DPH or Liggett was a beneficiary of the Geneva bank land trust. DPH's attorney stated that he was unaware of any of these purported conveyances. Grafft addressed the court and stated that he was "happy to hand over all interest in the property" to Velasquez and that he had no objection to the issuance of a tax deed. The court continued the prove-up for one week to allow the filing of the prove-up transcript and the presentation of original receipts showing that Velasquez had paid the outstanding taxes for all years from 2012 through the present, as required by the Code. The written order stated that the matter was continued to January 17, 2017, "for the entry of an order directing the Kane County clerk to issue a tax deed."

¶ 17    On January 17, 2017, the trial court granted Grafft time to file a pleading regarding his standing to be heard in the tax-deed proceedings and any objections he might have to the issuance of the tax deed, and allowed Velasquez a brief time after that to file any response. The

issue of Grafft's standing and any objections would be heard on February 28, 2017. The order noted that, although Liggett was present in court, his attorney was not.

¶ 18    On February 27, 2017, DPH filed a handwritten motion to vacate the grant of summary judgment. On February 28, 2017, the trial court entered two orders. The first order, which noted that Liggett appeared that day without his attorney, struck the motion to vacate and stated that Grafft had withdrawn any objections to Velasquez's petition for a tax deed. The second order directed the Kane County clerk to issue a tax deed for the Property to Velasquez.

¶ 19    DPH subsequently retained another attorney and filed a motion to vacate the order of February 28, 2017, granting Velasquez the tax deed. DPH argued that its counsel had not been present and that Liggett had not realized that the issuance of the tax deed could occur on that date. It also argued that the affirmative defenses raised in its original answer to the tax-deed petition had never been ruled on and should be heard. Velasquez responded that those affirmative defenses were rendered a nullity by DPH's amended answer, which superseded its original pleading. Fraud was the only affirmative defense raised in the amended answer, and the trial court had granted summary judgment in Velasquez's favor on that defense. Velasquez also noted that, even if Liggett was not represented at the January 17 and February 28 court dates, Liggett himself was present and the issuance of the tax deed had been before the court since January 10 and was delayed only to allow full exploration of Grafft's interest and to hear any objections. The trial court denied the motion to vacate on May 4, 2017, and DPH appealed.

¶ 20                                II. ANALYSIS

¶ 21    DPH appeals the orders entered December 20, 2016 (granting summary judgment in favor of Velasquez), February 28, 2017 (directing the issuance of the tax deed), and May 4, 2017 (denying the motion to vacate). Its primary argument is that Velasquez is barred from receiving

the tax deed because, at the time he bought the tax-sale certificate, he held an interest in the Property. Thus, it argues, the trial court erred in granting summary judgment for Velasquez.

¶ 22 A motion for summary judgment is properly granted where the pleadings, depositions, admissions, and affidavits establish that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2016); *Gaylor v. Village of Ringwood*, 363 Ill. App. 3d 543, 546 (2006). Although summary judgment has been called a "drastic measure," it is an appropriate tool to employ in the expeditious disposition of a lawsuit in which " 'the right of the moving party is clear and free from doubt.' " *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001) (quoting *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)). We review *de novo* the grant of summary judgment. *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 19. The same standard of review applies to purely legal issues of contract and statutory construction. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005); *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003).

¶ 23 We note that the record does not include any transcript or other report of the hearings that gave rise to the orders being appealed, including the hearing on the motion for summary judgment. Thus, we do not know the basis for the trial court's rulings.

"The burden rests on the appellant to provide a sufficient record to support a claim of error, and in the absence of such a record, the reviewing court will presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). '[I]n the absence of a proper record a reviewing court may dismiss an appeal or, in the alternative, summarily affirm the judgment of the trial court.' " *Marx Transport, Inc. v. Air Express International Corp.*,

379 Ill. App. 3d 849, 853 (2008) (quoting *Landau & Associates, P.C. v. Kennedy*, 262 Ill. App. 3d 89, 92 (1994)).

"On the other hand, the failure to present a report of proceedings does not require automatic dismissal or affirmance where issues can be resolved on the record as it stands." (Internal quotations omitted.) *Id.* Even where we do not know the basis for the trial court's decision, we may affirm that decision if it is supported by the record as a whole, regardless of whether our decision is based on the same ground. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007).

¶ 24    A. Rule Precluding Owner, Mortgagee, or Lienor From Obtaining Tax Deed

¶ 25    DPH begins by noting that, under Illinois law, the holder of an ownership, mortgage, or lien interest in property may not obtain a tax deed for that property. DPH argues that Velasquez is similarly barred from obtaining the tax deed for the Property, because of his status as (1) a lessee, (2) a "property manager," or (3) someone who had contracted to purchase an ownership interest in the Property. We outline the general rule and then consider whether any of Velasquez's roles fall within that rule.

¶ 26    In *In re Application of Boone County Collector*, 131 Ill. App. 3d 939, 941 (1985) (*Candlewick*), we explained the general rule that, where more than one person holds an interest in property, "an owner or mortgagee, because of its interest in the property and [its] obligation to pay the taxes on it, may not purchase the property at a tax sale and thereby cut off the interest in the property of the other party." We held that the same rule applied to lienors. *Id*. at 943.

> "The rationale for this rule is that equity regards the land as a common fund for the payment of all liens and mortgages and it would be inequitable and a fraud for one lienor to acquire title to the land by a tax sale and use it to destroy the claim of another lienor or mortgagee. The lienor is authorized to redeem from the tax sale and equity

will not allow him to acquire the title for an inconsiderable sum when he was authorized to remove the trifling incumbrance by redemption." *Id*. at 941.

We noted that section 235a of the Revenue Act of 1939 (Revenue Act)[1] prohibited anyone who was "responsible for the payment of the delinquent taxes" from purchasing at a tax sale. *Id.* (quoting Ill. Rev. Stat. 1983, ch. 120, ¶ 716a). In using this language, we explained, the legislature intended to preclude not only owners but also mortgagees and lienors—those who had a duty to pay the taxes in order to protect their security interest in the property—from obtaining a tax deed. *Id*. at 944-45. Instead, when an owner, mortgagee, or lienor purchases at a tax sale, its payment is treated as a payment of the taxes rather than a purchase. *Id*. at 946. In the years since *Candlewick* was decided, this rule has been consistently applied. See, *e.g.*, *In re Application of County Treasurer & Ex Officio County Collector*, 2017 IL App (4th) 160707, ¶ 27 (affirming trial court's denial of tax deed to lienholder); *Goldberg v. Michael*, 328 Ill. App. 3d 593, 600 (2002) (noting "well-settled law" that homeowner's association, "as a lienholder, may not purchase the tax certificate").

¶ 27 In *Candlewick*, we held that the persons who are "responsible for the payment of delinquent taxes" under section 235a of the Revenue Act generally are the same persons who have the right to redeem the taxes.[2] See *Candlewick*, 131 Ill. App. 3d at 943. Section

---

[1] The Revenue Act was the predecessor to the Code.

[2] On appeal, Velasquez challenges this holding, arguing that these two groups—persons responsible for paying taxes and persons who may redeem under section 21-345(a) of the Code—are not necessarily the same. For instance, beneficiaries of land trusts may be responsible for paying taxes, yet they are specifically prohibited from redeeming under section 21-345(a). 35 ILCS 200/21-345(a) (West 2014). We need not resolve this issue here, because we affirm the trial

21-345(a) of the Code grants the right to redeem to "any owner or person interested in [the] property." 35 ILCS 200/21-345(a) (West 2014). DPH argues that Velasquez must be considered a "person interested in the property" because he was (1) a lessee, (2) a property manager, or (3) a contract purchaser of an interest in the Property, under the Agreement. We examine each contention in turn.

¶ 28                                    1. Lessee

¶ 29    DPH argues that a leasehold is an interest in property and that lessees thus fall within the category of persons who have the right to redeem taxes under section 21-345(a) of the Code. However, section 21-345(a) does not define who has an interest in property—it simply states that "[a] right to redeem property from any sale under this Code shall exist in any owner or person interested in that property." 35 ILCS 200/21-345(a) (West 2014). DPH has provided no legal support for its assertion that a possessory interest such as a leasehold, standing alone, confers the right to redeem taxes under section 21-345(a).

¶ 30    Although DPH cites case law for the proposition that the holder of a nonownership interest such as a mortgage or lien may redeem, none of the cited cases involves a mere possessory interest. See *Candlewick*, 131 Ill. App. 3d at 943 (lienholder); *Monreal v. Sciortino*, 238 Ill. App. 3d 475, 476 (1992) (person asserting equitable title to the property had filed a *lis pendens*). Even *Lomax v. Gindele*, 117 Ill. 527, 530 (1886), which DPH cites for the proposition that a redemption by one "co-tenant" inures to the benefit of all, actually involved co-*owners* ("tenants in common"), not lessees. Although *Monreal* states that a person entitled to redeem taxes "need only have an undefined interest in the real estate," all of the cases it relies

court's decision on other grounds.

upon involve persons holding legal or equitable title or a security interest in the property. *Monreal*, 238 Ill. App. 3d at 478.

¶ 31   The little case law that does touch on the issue of whether a possessory interest is sufficient to confer a right to redeem cuts against DPH's argument.   In *In re Application of the Cook County Treasurer*, 185 Ill. 2d 428, 435 (1998) (*Loop Mortgage*), our supreme court noted that a mere occupant of property does not have the right to redeem under section 21-345(a). This is consistent with the rule itself, which provides that those who have an obligation to pay property taxes may not better their title by purchasing taxes.   *Candlewick*, 131 Ill. App. 3d at 941.   Ordinarily, lessees do not have the obligation to pay taxes on the property they rent. Thus, the rationale for the rule does not apply to them and there is no reason to bar them from obtaining tax deeds through tax purchases.

¶ 32   At oral argument, DPH argued that public policy reasons support extending the rule barring those with ownership and security interests in property from receiving tax deeds to apply to lessees as well.   DPH notes that rents provide an income stream that owners might rely upon for funds to pay property taxes, and it argued that a lessee can "manipulate" the tax-sale system by failing to pay rent, thereby increasing the likelihood that the owner will be unable to pay the taxes, the taxes will be sold, and the lessee can then swoop in and purchase them, thereby depriving the rightful owner of its property.   Leaving aside the attenuated and speculative nature of this hypothetical chain of events, we reject the contention that this argument supports the extension of the rule to lessees.   Property owners have the obligation to pay property taxes regardless of whether their properties are leased to tenants, and the burden of ensuring that they have the funds to pay those taxes is properly placed on them.   If a lessee fails to pay rent, the owner has ample means of redress through eviction procedures, which include the ability to seek past-due rent and other damages.

¶ 33    There may be occasions in which a lessee owes a contractual duty to pay property taxes under the terms of the lease, and in such circumstances, perhaps a lessee could be barred from receiving a tax deed if the lessee's failure to pay those taxes was the cause of the taxes being sold.    We need not decide this issue, however, as no such situation is before us.    In this case, nothing in the Velasquezes' lease obligated them to pay property taxes.    Further, as noted, DPH's argument that Velasquez's possessory interest gave him the right to redeem under section 21-345(a) lacks any legal support.    We therefore reject DPH's argument that Velasquez's status as a lessee prevented him from obtaining a tax deed.

¶ 34                                    2. Property Manager

¶ 35    DPH next contends that Velasquez acted as a property manager, collecting rents and exercising day-to-day control, and that this status made him a "person interested in the property" under section 21-345(a) so that he should be barred from obtaining a tax deed for the Property. As an initial matter, it is far from clear that Velasquez actually exercised any control over the Property.    Most of DPH's citations to the record on this point are to the allegations of its amended answer and affirmative defense.    But allegations are not proof and are insufficient to demonstrate the existence of a question of fact that would prevent the entry of summary judgment.    See *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 380 (1974) (in deciding a motion for summary judgment, the court must consider "evidentiary facts" and the nonmovant cannot rely solely on allegations to show a factual issue).    The only actual evidence offered on this point is Liggett's assertion in an affidavit that DPH "ceded day-to-day management" of the Property to Velasquez and the fact that in May 2015 Velasquez and Liggett both signed a 30-day notice terminating a tenancy.    DPH has not provided citations to the record that would further illuminate the nature or duration of any control exercised by Velasquez.

¶ 36   Even if we assume that Velasquez served as a property manager at some point, however, DPH provides no legal authority whatsoever that a property manager is a "person interested in the property" under section 21-345(a) of the Code.   Instead, DPH merely relies on the bald assertion that, as property manager, Velasquez "had an interest in the Property that likely gave him the right, and the duty, to redeem the taxes."   This bare statement is no substitute for reasoned argument or legal authority and thus DPH has forfeited this point.   Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (where a party does not offer any argument or meaningful authority in support of that argument, the argument is forfeited); see also *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56.   We therefore dismiss this argument and turn to the last argument raised by DPH: that Velasquez acquired rights in the Property under the Agreement that should prevent the issuance of a tax deed to him.

¶ 37                              3. The Agreement to Purchase

¶ 38   Illinois law has long held that a contract purchaser (someone who has contracted to buy property) "has an equitable interest in the property which gives him a right to redeem."   *Loop Mortgage*, 185 Ill. 2d at 437 (citing *Franzen v. Donichy*, 9 Ill. 2d 382, 387 (1956)).   DPH argues that, because Velasquez signed the Agreement to acquire a majority interest in DPH (the beneficial owner of the Property under the land trust), he therefore had the right to redeem and should be barred from acquiring the Property through a tax sale.   We have no quarrel with the general principle that contract purchasers are within the category of persons who may redeem under section 21-345(a) and who are barred from acquiring title through a tax sale to the property they contracted to buy.   However, we find that, because the evidence unquestionably establishes that DPH repudiated the Agreement in June 2015 and that Velasquez elected to treat the Agreement as terminated in response to the repudiation, Velasquez had no rights under that contract and was not bound by it when he purchased the 2011 taxes from Alterna in October

2015. As the Agreement was no longer in effect, Velasquez was no longer a contract purchaser with a right to redeem and thus he was not barred from receiving a tax deed for the Property.

¶ 39 Anticipatory repudiation of a contract arises through "a manifestation by one party *** of an intent not to perform its contractual duty when the time comes for it to do so even if the other party has rendered full and complete performance." *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1031 (2007). The expression of the intent not to perform must be "definite and unequivocal." *In re Marriage of Olsen*, 124 Ill. 2d 19, 24 (1988). "When one party to a contract repudiates his contractual duties before time for performance the other party may elect to treat the contract as ended. In such cases the nonbreaching party is not required to tender performance or to comply with conditions precedent." *Builder's Concrete Co. of Morton v. Fred Faubel & Sons, Inc.*, 58 Ill. App. 3d 100, 106 (1978); see also *Tower Investors*, 371 Ill. App. 3d at 1032 ("when one party repudiates a contract, the nonrepudiating party is excused from performing").

¶ 40 Here, Velasquez submitted evidence of anticipatory repudiation by DPH: the letter dated June 2, 2015, stating that DPH was terminating the Agreement and that Velasquez should consider it "null, void and of no legal effect," and the letter of June 23, 2015, stating that there were "no existing agreements in force other than the lease." These statements were definite and unequivocal manifestations of DPH's intent not to perform its promises under the Agreement. In response, Velasquez chose to treat the Agreement as ended. Notably, the record does not disclose any argument by DPH (much less any evidence) that it did *not* intentionally and unequivocally repudiate the Agreement in June 2015. Nor is there any evidence that DPH ever withdrew this repudiation. *Builder's Concrete*, 58 Ill. App. 3d at 105 ("[a]n anticipatory repudiation continues in effect until affirmatively retracted by the repudiator"). Thus, it is undisputed that the Agreement was no longer in force when Velasquez bought the 2011 taxes.

¶ 41    In light of this evidence, the trial court was fully justified in granting summary judgment in favor of Velasquez.   As DPH conceded in its amended answer, all of the legal requirements for the issuance of the tax deed had been met.   Further, DPH could not prove its affirmative defense of fraud because that defense relied upon the existence of the Agreement, which DPH had repudiated months before Velasquez sought to redeem the taxes.   As DPH had no legal basis on which to oppose the issuance of the tax deed, summary judgment was appropriate. *Morris*, 197 Ill. 2d at 35.

¶ 42    Although DPH does not dispute that it repudiated the Agreement, it argues that Velasquez should have been judicially estopped from relying on that repudiation because, in his answer to the eviction complaint, he asserted a counterclaim for specific performance of the Agreement.   "The doctrine of judicial estoppel applies when a party takes a position, benefits therefrom, and then attempts to take a contrary position in a subsequent proceeding." *Johnson v. Fuller Family Holdings, LLC*, 2017 IL App (1st) 162130, ¶ 33.   In order for judicial estoppel to apply, the party to be estopped must have "(1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) succeeded in the first proceedings and received some benefit." *Id*. ¶ 34 (citing *Seymour v. Collins*, 2015 IL 118432, ¶ 47).   "Judicial estoppel must be proved by clear and convincing evidence." *Id*.

¶ 43    Here, DPH has not shown either that Velasquez has taken factually inconsistent positions or that he succeeded in the first proceeding.   Taking the latter point first, there is no indication in the record as to the outcome of the eviction case and thus DPH has not proved that Velasquez was "successful" in that proceeding.   More significantly, Velasquez has not taken two factually inconsistent positions.   In his affirmative defense and counterclaims in the eviction action, Velasquez never alleged that the Agreement was still in effect.   Rather, Velasquez alleged that

he had partially performed his obligations under the Agreement by satisfying the mechanic's liens and making a payment toward the 2014 taxes, but that DPH then revoked the Agreement without refunding any of the money paid on its behalf. Velasquez alleged that he and Katie were ready and willing to proceed with their further obligations under the Agreement (including redeeming the 2011 taxes) if DPH were ordered to perform its obligation to convey 51% of its interest in the Property to them.

¶ 44 These allegations are not inconsistent with the argument that DPH repudiated the Agreement or that the Agreement was ended by that repudiation. "A continued willingness upon the part of the injured party to receive performance is an indication that, if the repudiator will withdraw his repudiation, but not otherwise, the contract may proceed. It is not an irrevocable election not to treat the renunciation as a breach." *Builder's Concrete*, 58 Ill. App. 3d at 105 (quoting *Bu-Vi-Bar Petroleum Corp. v. Krow*, 40 F.2d 488, 492 (10th Cir. 1930), citing 11 Walter H.E. Jaeger, Williston on Contracts § 1334 (3d ed. 1968)). Accordingly, Velasquez is not judicially estopped from asserting that DPH repudiated the Agreement and that he was therefore released from his obligation (and right) to redeem the 2011 taxes. As Velasquez was not a contract purchaser when he bought the tax-sale certificate from Alterna, he was not barred from obtaining a tax deed.

¶ 45                            B. Remaining Arguments

¶ 46 Perhaps recognizing the paucity of legal support for its arguments that Velasquez was barred from receiving a tax deed because of his status as a lessee, a property manager, or a contract purchaser, DPH raised a new argument at oral argument: that Velasquez was actually a lienholder, either because he had satisfied the mechanic's liens against the Property and was therefore entitled to seek reimbursement for that payment, or because he was a lessee and his lease could be described as an encumbrance upon the Property. In this way, DPH belatedly

sought to bring Velasquez within the ambit of *Candlewick*, which held that lienors may not obtain a tax deed for the property against which they hold a lien.

¶ 47    As an initial matter, DPH is prohibited from raising this argument because it failed to raise it earlier, either in the trial court or in its initial brief in this court.    Our supreme court rules mandate that the appellant's opening brief must set out all of that party's arguments on appeal and the legal and record support for those arguments; "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."    Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016); see also *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 127 (2010) ("A reviewing court will not consider arguments not presented to the trial court."); *Jeanblanc v. Sweet*, 260 Ill. App. 3d 249, 254 (1994) (arguments raised for the first time on appeal, even from an order that we review *de novo*, are deemed forfeited).

¶ 48    Even if we were to consider this belated argument, DPH has not supported it with any legal authority.    DPH has cited no legal support for the proposition that the mere description of a lease as an encumbrance on property means that every lessee is, legally speaking, equivalent to a lienholder.    And although Velasquez did settle the mechanic's lien proceeding against the Property, paying those liens, he has never placed a lien against the Property.    Nor has DPH identified any legal basis on which Velasquez could place such a lien.    Thus, this argument is forfeited both by the failure to raise it earlier and by the lack of any legal support provided by DPH.    Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016); *E.R.H. Enterprises*, 2013 IL 115106, ¶ 56. We turn to DPH's remaining arguments.

¶ 49    In an effort to convey its position that Velasquez engaged in fraudulent conduct by failing to perform his promise to redeem the 2011 taxes on the Property, DPH asserts that his conduct could possibly, in the context of tax-scavenger sales, be considered criminal.    As DPH concedes, however, tax-scavenger sales are not governed by the provisions of the Code that

apply to the sale of annual taxes, such as the one at issue here. We therefore find its argument to have little relevance here. DPH also argues that there were genuine disputes of material fact that should have prevented the entry of summary judgment on its affirmative defense of fraud, but it has not identified any. As discussed above, DPH never denied or put forward any evidence challenging Velasquez's contention that it had repudiated the Agreement and that he thus was not a contract purchaser when he bought the tax-sale certificate. And any dispute over whether Velasquez was a lessee or a property manager was immaterial, as it could not affect the outcome of the case. DPH has not shown any reason why the trial court's judgment should not be affirmed.

¶ 50                                    III. CONCLUSION

¶ 51    The judgment of the circuit court of Kane County is affirmed.

¶ 52    Affirmed.