(No. 88685.—

EDWARD MORRIS, Appellee, v. ARTHUR MARGU-LIS *et al.* (Bryan Cave, L.L.P., *et al.*, Appellants).

*Opinion filed July 19, 2001.*

HARRISON, C.J., took no part.

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin, David R. Reed and Stevie A. Kish, of counsel), for appellants.

Morris B. Chapman, of Granite City, for appellee.

Cheryl I. Niro, Dennis A. Rendleman and Mary T. McDermott, of Springfield, for *amicus curiae* Illinois State Bar Association.

JUSTICE FITZGERALD delivered the opinion of the court:

Following a federal jury trial, Edward Morris was convicted of mail fraud and wire fraud for his involvement in a public note offering by a now-defunct St. Louis savings and loan association. After his conviction was affirmed on appeal, Morris filed a breach of fiduciary duty complaint in the St. Clair County circuit court against, among others, a St. Louis law firm, which had represented Morris in several unrelated personal matters and served as the savings and loan association's corporate counsel, and four of the firm's partners. Morris alleged that these defendants breached their fiduciary duty to him when two of the partners drafted questions for the federal prosecutor to use in cross-examining Morris. The trial court granted summary judgment to the defendants, and the appellate court reversed. 307 Ill. App. 3d 1024. We allowed the defendants' petition for leave to appeal. *Morris v. Margulis*, 187 Ill. 2d 571 (2000); see 177 Ill. 2d R. 315(a). We now reverse the appellate court and affirm the trial court's award of summary judgment to the defendants.

## BACKGROUND

After the savings and loan industry was deregulated in the 1980s, Germania Bank (Germania), a St. Louis savings and loan association, expanded its loan portfolio beyond traditional residential real estate loans into larger residential and commercial projects. These projects diluted the bank's loan loss reserves, its protection against loan defaults. In early 1987, as Germania responded to concerns from its independent auditors and federal regulators about the adequacy of its loan loss reserves, Morris, the bank's chief executive officer, proposed that the bank make a $10 million public offering of subordinated capital notes, or "Schnotes." Following a September 1987 internal review of Germania's loan

portfolio, the bank management recommended that the bank's executive committee add $9.3 million in loan loss reserves. The executive committee rejected this recommendation and, instead, approved only an additional $1.2 million in reserves. This decision allowed the bank to show a quarterly profit immediately before the Schnote offering. Germania's Schnote offering circular, however, assured potential investors that the bank had made adequate provision for estimated loan losses. The Schnote sales began in October 1987 and proceeded into March 1988.

In a year-end audit for 1987, Germania's independent auditors recommended an additional $6.5 to $13 million in loan loss reserves. In February 1988, near the conclusion of the Schnote offering, the bank's board of directors ultimately approved $9.4 million in additional reserves. Germania's financial condition quickly deteriorated. In 1990, Germania was seized by the Office of Thrift Supervision, and the Resolution Trust Corporation became its conservator. The Schnotes became worthless.

The federal government then began civil and criminal investigations into the Schnote offering, which resulted in an indictment against Morris for mail fraud and wire fraud. The government charged that Morris, as Germania's chief executive officer, disseminated the Schnote offering circular without disclosing the need for additional loan loss reserves. Morris initially asked Bryan Cave, L.L.P. (Bryan Cave), a St. Louis law firm and Germania's corporate counsel, to represent him in the criminal case stemming from the Schnote offering. The firm previously had represented Morris in personal matters— estate planning, domestic relations, and employment compensation. Bryan Cave declined to represent Morris in the criminal case, however, because of a potential conflict of interest. John Goebel, a Bryan Cave partner,

was an outside director of Germania and had been named as a defendant in civil litigation related to the Schnote offering. Goebel was represented by Bryan Cave partner Daniel O'Neill, who asserted that Goebel was also a subject in the government's criminal investigation. Morris' wife, a Bryan Cave contract attorney, did receive guidance from O'Neill in drafting Morris' response to an investigation by the Securities and Exchange Commission (SEC).

In October 1993, Morris' federal criminal trial began. Arthur Margulis, Morris' defense attorney, outlined an advice-of-counsel defense in his opening statement:

"Let's talk about what the evidence is going to show you about the concealment of this September [1987] analysis. First, I anticipate that Jimmy New [Germania's chief financial officer] is going to testify for the Government, and I think he is going to tell you that he said to Ed Morris after the meeting, don't you think we ought to talk to our lawyers and see if we're supposed to disclose this to anybody, and Ed Morris said yes, I do, I think we should, and he contacted John Goebel at Bryan Cave. That's the largest law firm in this area. He contacted him, told him the situation, and John Goebel said I don't think in view of what you told me, in view of the way it was prepared, I don't think there is any reason to disclose it. Jimmy New will tell you that Ed Morris came back to him and said we don't have to disclose it.

* * *

The Schnote sales go ahead, but as soon as the [independent auditor's] report came out with the analysis that they needed the nine million, it was Ed Morris who stopped the Schnote sales. Ed Morris again goes to Bryan Cave, John Goebel the lawyer and said should we offer the people who have bought this the right to rescind, and the advice is, the legal advice is, let's wait and see what happens, and six days later the sales resume and they sold out.

Throughout everything I am telling you, ladies and gentlemen, Ed Morris *** consulted the lawyers on a regular basis, not just about the offering circular but about the marketing to make sure they were in compliance with the

law, and they were assured at every step of the way that they were."

O'Neill and Thomas Archer, another Bryan Cave partner representing Goebel, heard Margulis' opening statement. In response, O'Neill drafted and delivered to the federal prosecutor a three-page document entitled "Possible Areas of Inquiry" containing 15 multipart questions for use in cross-examining Morris. The proposed questions sought to show the lack of evidence that Morris relied upon Goebel's legal advice in failing to disclose Germania's inadequate loan loss reserves. Several days later, Morris' wife surreptitiously discovered the questions in a search she made of the law firm's computer system; she dictated them and gave an audio tape to Margulis' associate.

At trial, Morris did not testify that he had relied upon Goebel's legal advice. Asked whether he and Goebel discussed Germania's disclosing the recommended reserve increase, Morris replied, "[N]ot that I remember, I don't think we discussed it." The proposed questions were not used by the government. Morris was convicted on two counts of mail fraud and one count of wire fraud and was sentenced to 46 months' imprisonment. His convictions and sentence were affirmed on appeal (*United States v. Morris*, 80 F.3d 1151 (7th Cir. 1996)), and the United States Supreme Court denied his petition for a writ of *certiorari* (*Morris v. United States*, 519 U.S. 868, 136 L. Ed. 2d 120, 117 S. Ct. 181 (1996)).

While Morris' federal appeal was pending, he filed a breach of fiduciary duty complaint against, among others, defendants Bryan Cave and its partners Goebel, O'Neill, Archer, and Alan Dixon.[1] The defendants moved for summary judgment. Specifically, they contended that

[1] Morris' original complaint also contained breach of fiduciary duty counts against Margulis and his firm. Morris amended his complaint to add civil conspiracy counts against Bryan Cave,

they did not breach any fiduciary duty which they may have owed to Morris by providing the federal prosecutor with the proposed cross-examination questions. According to the defendants, ethics rules allowed them to defend themselves against the accusation in defense counsel's opening statement that Goebel had advised Morris not to reveal the need for greater loan loss reserves. The defendants also contended that no attorney-client relationship existed between the parties with respect to Germania matters, that Morris could not recover damages for his conviction because the conviction was never overturned, that the proposed questions were not a proximate cause of the conviction and would not support recovery for emotional distress, and that the complaint was barred by the applicable statute of limitations. The trial court granted summary judgment to the defendants.

The appellate court reversed. The court concluded that an attorney-client relationship may have existed between Bryan Cave and Morris with respect to Germania matters. 307 Ill. App. 3d at 1037. The court held that the opening statement did not waive Morris' attorney-client privilege because the accusation against the defendants did not arise in Morris' own testimony. 307 Ill. App. 3d at 1038. Additionally, the court held that Morris did not have to establish his actual innocence of the criminal charges as part of his cause of action against the defendants, that he could recover damages for his

O'Neill, and Archer, alleging that Goebel had conspired with the federal prosecutor to obtain Morris' conviction. The Bryan Cave defendants removed the case to federal district court. See 28 U.S.C. § 1442(a)(1) (1994). The federal court dismissed the counts against Margulis. When Morris voluntarily dismissed his conspiracy counts (see Fed. R. Civ. P. 41(a)(2)), supplemental jurisdiction over his remaining fiduciary duty counts disappeared (see 28 U.S.C. § 1367(c)(3) (1994)). The case then was remanded to the St. Clair County circuit court to proceed against these defendants.

emotional distress, and that he timely filed his complaint. 307 Ill. App. 3d at 1039-40. This appeal followed.[2]

## ANALYSIS

The defendants raise six issues on appeal. We focus upon their final issue: whether summary judgment was appropriate because Morris' breach of fiduciary duty claims were time-barred under section 13—214.3 of the Code of Civil Procedure. See 735 ILCS 5/13—214.3 (West 1994).

Summary judgment should be granted if "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1998); *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 30-31 (1999). Summary judgment can aid in the expeditious disposition of a lawsuit, but it is a drastic measure and should be allowed only "when the right of the moving party is clear and free from doubt." *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). If the plaintiff fails to establish any element of his claim, summary judgment is appropriate. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). Our standard of review is *de novo*. *Jones v. Chicago HMO Ltd.*, 191 Ill. 2d 278, 291 (2000).

Section 13—214.3(b) provides:

"An action for damages based on tort, contract, or otherwise *** against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13—214.3(b) (West 1994).

Section 13—214.3(b) contains its own "discovery" rule. Under the discovery rule a limitations period begins

---

[2]We granted leave to the Illinois State Bar Association to file a brief as *amicus curiae* in support of the defendants on the limitations period issue. See 155 Ill. 2d R. 345.

to run only when the plaintiff "knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981); accord *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249 (1994). Normally, the discovery date will be a question of fact. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1981). "Where it is apparent from the undisputed facts, however, that only one conclusion can be drawn, the question becomes one for the court." *Witherell*, 85 Ill. 2d at 156.

In his deposition Morris testified that he first learned of the proposed cross-examination questions "[s]ometime during the [federal] trial. *** I think it was, my best recollection, it was in the middle of my testimony." Morris later clarified that he received a copy of the questions "the tail end of the week before the conviction" or "[a]t least the week before" the jury returned its guilty verdict on November 10, 1993. When asked by the defendants' attorney if he felt damaged at the time he saw the questions, Morris answered:

"Oh, yes, sir, absolutely damaged.
* * *
That the firm that I had used for years, the firm that, great friends that I had, sharing information during the time prior to the indictment with my wife, all of a sudden had been using information *** to try to convict me. Hell, yes, I would have thought I was damaged, hell, yes."

Thus, Morris discovered his alleged injury and its wrongful cause before his November 10, 1993, conviction, but he did not file his complaint until November 13, 1995, more than two years later.

Morris still contends that his complaint was timely. In support, Morris relies upon his own affidavit opposing the defendants' summary judgment motion, in which he stated that he did not discover his claim against the defendants until April 1995, when his attorney in his

federal appeal advised that Morris may have a claim against the defendants. This affidavit, however, contradicts his deposition testimony, and we have held previously that a party's later submission of an affidavit inconsistent with that party's deposition testimony will not raise a disputed issue of fact or prevent the entry of summary judgment. See *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 422 (1991). Additionally, Morris did not need a professional opinion concerning the defendants' putative misconduct to know that he was wrongfully injured. See *Butler v. Mayer, Brown & Platt*, 301 Ill. App. 3d 919, 923 (1998).

Morris further contends that Goebel made a "deal" with the federal prosecutor to refute Morris' advice-of-counsel defense, but never informed Morris about this arrangement before his criminal trial began. This secret betrayal, Morris contends, was "tantamount to fraud," and the limitations period accordingly was tolled under section 13—215 of the Code of Civil Procedure. Section 13—215 provides:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13—215 (West 1998).

The appellate court agreed with Morris: "If Bryan Cave had an attorney-client relationship with Morris, then the act of secretly providing cross-examination questions or other assistance to the United States Attorney would constitute a breach of the duty of loyalty. Because the act was secret, it would be a fraudulent concealment." 307 Ill. App. 3d at 1041, citing *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555 (1980).

We need not decide whether section 13—215 tolls the limitations period in section 13—214.3(b), or whether the defendants fraudulently concealed Morris' breach of

fiduciary duty claim when they gave the proposed questions to the federal prosecutor without telling Morris. "If at the time the plaintiff discovers the 'fraudulent concealment' a reasonable time remains within the applicable statute of limitations, [section 13—215] does not toll the running of the limitation period." *Anderson v. Wagner*, 79 Ill. 2d 295, 322 (1979); accord *Serafin v. Seith*, 284 Ill. App. 3d 577, 590 (1996); *Muskat v. Sternberg*, 211 Ill. App. 3d 1052, 1061 (1991) ("This rule is logical because once a party discovers the fraud, it is no longer concealed, and if time remains within which to file the action, section 13—215 cannot operate to toll the limitations period").

By his deposition testimony Morris acknowledged that he discovered the alleged fraudulent concealment shortly after it occurred and prior to his conviction. His claim accrued, and the limitations period began, at the same time the concealment ended. Accordingly, he had two years in which to file his breach of fiduciary duty claim. See *Barratt v. Goldberg*, 296 Ill. App. 3d 252, 258-59 (1998) (holding that an entire two-year limitations period constitutes ample time to file a legal malpractice complaint once the defendants' fraudulent concealment is discovered). Section 13—215 was inapplicable, and Morris' complaint was time-barred.

## CONCLUSION

For the reasons we have discussed, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

CHIEF JUSTICE HARRISON took no part in the consideration or decision of this case.