NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230460-U

NO. 4-23-0460

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 2, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| LANDERS CHILDREN FAMILY, LLC, an Illinois Limited Liability Company; WILLIAM LANDERS, Individually and as Co-Administrator on Behalf of the Estate of Ray Landers; NEXT GENERATION MINISTRIES INTERNATIONAL, INC., an Illinois Not-for-Profit Corporation; EQUIPPING THE SAINTS MINISTRY; INTERNATIONAL, INC.; JENNIFER CHANCE; and BILLIE SUE LANDERS, Not Individually but as Trustee of the Landers Family Trust, Plaintiffs-Appellants, v. EDMOND REES; BRANDENBURG-REES & REES, an Illinois General Partnership; SONDRA NARMONT and WILLIAM J. NICHOLLS, as Co-Executors of the Estate of John Narmont; JASON GERMERAAD; and SCOTT AND SCOTT, P.C., an Illinois Business Corporation, Defendants-Appellees. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Sangamon County No. 20L252 <br><br><br><br><br><br><br><br><br><br><br> Honorable Gail L. Noll, Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Doherty and Turner concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court did not err by granting defendants' motions to dismiss plaintiffs' legal malpractice complaint on the basis that it was not timely filed within the two-year statute of limitations.

¶ 2     Plaintiffs—Landers Children Family, LLC, an Illinois limited liability company

(LCF); William Landers, individually and as coadministrator of the estate of Ray Landers; Next

Generation Ministries International, Inc., an Illinois not-for-profit corporation (Next Generation);

Equipping the Saints Ministry International, Inc. (Equipping the Saints Ministry); Jennifer Chance; and Billie Sue Landers, as trustee of the Landers Family Trust (Trust)—appeal the trial court's dismissal with prejudice of their legal malpractice complaint against defendants—Edmond Rees; Brandenburg-Rees & Rees, an Illinois general partnership; Sondra Narmont and William J. Nicholls, as coexecutors of the Estate of John Narmont; Jason Germeraad; and Scott and Scott, P.C., an Illinois business corporation. They contend the court erred in finding their legal malpractice action was untimely filed outside the relevant two-year statute of limitations or determining that their action was untimely as a matter of law when (1) questions of fact existed as to the timeliness of their complaint or (2) multiple conclusions could be reached from the undisputed facts. Alternatively, plaintiffs argue the court erred in failing to find the doctrines of equitable estoppel and fraudulent concealment barred defendants from raising a statute of limitations defense. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On December 28, 2020, plaintiffs filed their legal malpractice complaint against defendants. Decedent Ray Landers was originally named as a plaintiff in the complaint; however, following his death during the underlying proceedings, a representative of his estate was substituted as a party plaintiff. Similarly, on appeal, this court granted a motion filed by counsel for defendant Narmont, alleging Narmont died in January 2024 and asking to substitute representatives of his estate as party defendants. (We note a suggestion of death was also filed with this court indicating defendant Rees died in May 2023; however, no motion to substitute an alternate party has been filed relative to his death.) Plaintiffs' complaint set forth the following factual allegations.

¶ 5        Ray was a minister who, with his wife Billie Sue Landers and children, "purchased

and developed \*\*\* properties to advance Ray's ministries and to support their families." Ray formed various business entities, including plaintiffs Next Generation, Equipping the Saints Ministry, and LCF, a real estate development company. Ray's four children, including plaintiffs William and Jennifer, were members of LCF. Jennifer was LCF's manager from 2004 to 2014, and Ray was authorized to act as LCF's agent. To finance its projects, LCF obtained loans from State Bank of Lincoln (State Bank). From May 2009 to January 2014, State Bank extended five loans to LCF, which totaled over \$2.4 million and were secured by mortgages on real estate owned by LCF. The terms of the loans were set forth in promissory notes, each of which contained a provision that authorized any attorney to appear in court without process and confess judgment in favor of State Bank for any amount due on the note.

¶ 6        In October 2014, Ray began negotiating with State Bank regarding "additional financing" for LCF. As part of the negotiations, he "sought the advice and counsel of" attorneys Rees and Narmont. During negotiations, State Bank proposed a forbearance agreement, under which existing loans "would not be foreclosed upon" and LCF would provide "additional collateral." Ray told Rees and Narmont that he did not want to add additional property as collateral because he intended such property to be inherited by his children. He also informed them of his belief that State Bank had not accurately stated the amount of the loans. Rees and Narmont advised Ray that he could protect properties not encumbered by loans by transferring them into a trust. Ray agreed to follow their advice, and Narmont prepared a family trust. In December 2014, LCF transferred property not encumbered by the State Bank loans into the Landers Family Trust, of which Billie Sue was trustee. Thereafter, Rees and Narmont continued to negotiate with State Bank on behalf of LCF.

¶ 7        Ultimately, however, State Bank initiated legal proceedings against LCF and other

plaintiffs. In April 2015, in Sangamon County case No. 15-L-100, State Bank obtained confessions of judgment based on the five loans it extended to LCF in amounts totaling over $3.2 million and representing unpaid principal, interest, charges and late fees, and attorney fees. According to plaintiffs, neither Ray nor LCF were given notice of the proceedings for confessions of judgment.

¶ 8        Also in April 2015, in Sangamon County case No. 15-CH-192, State Bank brought an action against LCF, Ray, "and other associated entities" to foreclose on the properties that secured the promissory notes for the loans. Plaintiffs alleged that when Ray received notice of the litigation, he forwarded it to Rees and Narmont. Finally, in August 2015, in Sangamon County case No. 15-CH-316, State Bank brought a third action against LCF and the Trust, alleging the fraudulent transfer of assets in connection with LCF's transfer of property into the Trust.

¶ 9        Plaintiffs alleged that prior to State Bank initiating legal proceedings, Rees caused his law firm, defendant Brandenburg-Rees & Rees, to file suit against Ray, LCF, Equipping the Saints Ministry, Next Generation, William, and Jennifer, alleging Rees and his law firm were entitled to $71,786 in unpaid legal fees. After State Bank's causes of action were filed, Rees agreed to represent plaintiffs in both the foreclosure and fraudulent transfer cases, while "Narmont also agreed that he would continue to assist *** plaintiffs when needed." According to plaintiffs, Rees conditioned his representation on Ray consenting to a judgment in the full amount of Rees's alleged unpaid attorney fees. Ray agreed, consenting to a judgment of $71,786 on behalf of LCF and the Trust. Following Ray's agreement, Rees told Ray he would file an appearance on behalf of plaintiffs in both the foreclosure and fraudulent transfer cases. Ray contacted Rees "from time to time *** to see how the cases were going," and "Rees would assure Ray the cases were proceeding satisfactorily." Plaintiffs maintained that when Narmont was asked about the cases, he repeatedly stated, "[N]ot to worry, 'We'll get 'er done.' "

¶ 10        Plaintiffs maintained, however, that contrary to Rees's and Narmont's assurances, the foreclosure and fraudulent transfer cases "were not going well," and Rees had not "responded or answered the complaints or appeared in court." On September 25, 2015, State Bank obtained a default judgment of foreclosure on all counts in the foreclosure case. At the time, Rees had not entered his appearance in the case. The foreclosure judgment provided for a redemption period ending on February 5, 2016, in connection with one of the properties at issue that was comprised of farmland, and otherwise stated the trial court's judgment was final and appealable and that a sheriff's sale would occur on a date set by State Bank. On October 8, 2015, State Bank filed notices of sale, indicating a sheriff's sale would occur on November 17, 2015.

¶ 11        Plaintiffs alleged that neither Rees nor Narmont took any action on their behalf after the judgment of foreclosure was entered. They also asserted that neither attorney informed them that the farmland property could be redeemed until February 2016 or "that someone could appear at the sheriff's sale on plaintiff[s'] behalf to bid on the property." On November 6, 2015, Rees appeared in court and obtained his judgment for unpaid attorney fees against LCF and the Trust. The same day, Rees wrote a letter to State Bank's attorney and requested a postponement of the November 17, 2015, foreclosure sale. He also mailed an answer to State Bank's complaint in the fraudulent transfer case, denying State Bank's allegations.

¶ 12        Plaintiffs alleged that between November 6 and 17, 2015, Rees did not file his appearance in the foreclosure case or any motions seeking to set aside the default judgment or to continue the sheriff's sale. They further asserted that Rees was "out of town" on November 17, 2015, and the sheriff's sale went forward with State Bank as the sole bidder on the four properties that were for sale. Plaintiffs alleged the fair market value of the properties exceeded $2 million and that the amount State Bank bid for the four properties totaled only $1.25 million. On November

20, 2015, State Bank filed a motion to confirm the sale of the four properties and mailed notice of its motion to LCF at Ray's home address. On December 7, 2015, Rees filed a motion to withdraw as counsel in the foreclosure case "despite never having filed an appearance in the matter" and "did not send notice of his motion to Ray." On December 18, 2015, Rees appeared at a hearing on State Bank's motion to confirm the sale and the motion was granted over his objection. On December 18, 2015, Rees filed another motion to withdraw as counsel "but failed to notice the motion for hearing."

¶ 13　　　　On February 5, 2016, the redemption period for the farmland property expired. On February 9, 2016, a sheriff's sale was held, and State Bank obtained the property with a bid of $783,000. Plaintiffs maintained that amount was "unconscionably low," as an appraisal showed the property was worth $1.9 million. The sale was confirmed following a hearing on February 26, 2016. Rees did not appear at the hearing on plaintiffs' behalf, nor did either Rees or Narmont raise an objection to the confirmation of the sale.

¶ 14　　　　Plaintiffs alleged Rees continued to represent LCF in the fraudulent transfer case and, on March 26, 2016, appeared in court on its behalf. They asserted, however, that he failed to appear at later court dates and LCF was sanctioned for failing to comply with State Bank's discovery requests. Plaintiffs alleged they were unaware "of the discovery requests until after responses were due." Rees filed a motion to withdraw as counsel in the fraudulent transfer case and, on November 7, 2016, a hearing was held on his motion. The trial court allowed Rees to withdraw over Ray's written objection. In his written objection, attached as an exhibit to plaintiffs' legal malpractice complaint, Ray denied a claim by Rees that it was impossible for him to communicate with his clients, asserting, instead, that it was Rees who had "stopped communications."

¶ 15 After Rees's withdrawal in the fraudulent transfer case, Ray "hired successor counsel in [the fraudulent transfer case] in an attempt to mitigate the damages caused by Rees and Narmont." (Although the complaint fails to name the "successor counsel," the record otherwise identifies that individual as attorney La Vetta Williams.) New counsel's mitigation efforts included filing a motion to vacate the sanctions that had been entered against LCF. According to plaintiffs, LCF eventually settled in the fraudulent transfer case by paying $1.5 million to State Bank "and entering into a full release to dismiss [the case] in May 2019."

¶ 16 With respect to their legal malpractice claims against defendant attorney Germeraad and his law firm, defendant Scott and Scott, P.C., plaintiffs alleged the following additional facts. In November 2015, Ray met with Germeraad at his law firm, informing him about the ongoing litigation with State Bank and the advice he received from Rees and Narmont. Germeraad agreed to represent plaintiffs "in the foreclosure and collection actions and in protecting their assets." However, Germeraad did not enter an appearance in any of the pending cases. Instead, he initiated a fourth action, Sangamon Count case No. 16-CH-55, "wherein Germeraad allegedly represented Chicago Title and Trust Company against Ray and various other Plaintiffs." The action Germeraad filed was consolidated with the fraudulent transfer case. In November 2017, Germeraad withdrew as counsel for Chicago Title and Trust Company.

¶ 17 Plaintiffs further alleged that in March 2020, Ray met with "potential counsel because he believed that [State] Bank may have defrauded LCF." According to plaintiffs, it was at that meeting that they first learned attorneys Rees and Narmont may have committed malpractice, and they retained an attorney to investigate the matter.

¶ 18 Plaintiffs asserted attorneys Rees, Narmont, and Germeraad, and the defendant law firms owed them a duty of care to handle their legal matters with reasonable care and skill. They

alleged the attorneys and law firms breached that duty in several respects, including (1) failing to ascertain their clients' objectives, (2) failing to fully investigate the facts and law, (3) failing to advise plaintiffs about alternatives available to them in their litigation with State Bank, (4) failing to develop a strategy to achieve plaintiffs' objectives, (5) failing to keep plaintiffs sufficiently or reasonably informed about the facts, law, and status of the pending litigation, (6) failing to act with diligence, (7) failing to file an appearance on behalf of plaintiffs in the pending ligation or appear in court for hearings, (8) placing the interests of defendants ahead of plaintiffs, (9) allowing personal relationships to interfere with their representation of plaintiffs, (10) lying to plaintiffs, (11) advising plaintiffs with respect to the transfer of property into a trust and preparing a trust contrary to plaintiffs' interests, (12) inducing plaintiffs to forgo objections to Rees's lawsuit for attorney fees, and (13) providing inaccurate legal advice. With respect to Germeraad and his law firm, plaintiffs additionally complained that Germeraad (1) failed to tell plaintiffs that the legal representation of Rees and Narmont "was rife with negligent conduct and failures to act and that *** plaintiffs likely had a legal malpractice claim against both attorneys" and (2) filed litigation on their behalf "which had virtually no chance of a favorable result *** and charged them $20,000 for the worthless suit."

¶ 19        All defendants filed motions to dismiss plaintiffs' complaint pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2020)), arguing it was untimely filed. They maintained that section 13-214.3(b) of the Code (*id.* § 13-214.3(b)) required a legal malpractice action to "be commenced within [two] years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." Defendants argued that, at the latest, the two-year limitations period began to run on December 20, 2018, when the trial court entered summary judgment in State Bank's favor in the

fraudulent transfer case.

¶ 20    In connection with their motions to dismiss, defendants attached exhibits consisting of (1) the trial court's December 20, 2018, summary judgment order in the fraudulent transfer case and (2) an unopposed motion to vacate judgment orders and dismiss the fraudulent transfer case. The summary judgment order showed that at the time the order was entered, LCF and the Trust were represented by attorney Williams. In its order, the court found no genuine issue of material fact existed with respect to State Bank's claims that (1) LCF's transfer of property to the Trust "was made with actual intent to hinder, delay and defraud" State Bank as a creditor of LCF and (2) the transfer was made for less than adequate consideration and rendered LCF insolvent. The court declared the December 2014 transfer of property from LCF to the Trust "void and of no legal effect." It also authorized State Bank to foreclose judgment liens against the property at issue, and enjoined LCF and the Trust from encumbering or otherwise transferring the property.

¶ 21    The unopposed motion to vacate judgment orders and to dismiss was filed in the fraudulent transfer case on May 14, 2019. The motion stated that the same day the trial court entered its summary judgment order (December 20, 2018), the parties had entered into a settlement agreement, which provided for LCF and the Trust to make a settlement payment to State Bank. The agreement further provided that upon receipt of the settlement payment, State Bank agreed to file a motion to vacate the summary judgment order and dismiss the litigation with prejudice. According to the motion, the settlement payment was received by State Bank on May 10, 2019, and, thus, it was requesting an order vacating the December 20, 2018, summary judgment order and dismissing the fraudulent transfer case with prejudice.

¶ 22    Defendants maintained the summary judgment order and motion to vacate established that plaintiffs knew on December 20, 2018, that they had suffered an injury. In

- 9 -

particular, they were aware that LCF's transfer of property to the Trust had been declared fraudulent and void and that the fraudulent transfer case was concluding unfavorably for them. Defendants asserted plaintiffs' legal malpractice complaint, filed more than two years later on December 28, 2020, was untimely and barred by the limitations period set forth in section 13-214.3(b) of the Code.

¶ 23 In responding to defendants' motions to dismiss, plaintiffs maintained their complaint was timely because it was filed within two years of when (1) the fraudulent transfer case concluded in May 2019 or (2) they learned in May 2020, during Ray's investigation of whether action could be taken against State Bank, that "defendants had been negligent in their legal representation." Plaintiffs alleged that, until May 2020, they were under the reasonable belief that only State Bank "was the culprit in the adverse litigation results." Plaintiffs further asserted that when the statute of limitations began to run was a question of fact, which precluded the trial court from summarily dismissing their complaint.

¶ 24 Alternatively, plaintiffs argued the trial court should bar defendants from raising a statute of limitations defense under the doctrines of equitable estoppel and fraudulent concealment. They asserted any delay with respect to the filing of their legal malpractice complaint was due to being misled by defendants. In particular, plaintiffs argued a long-term relationship existed between them and defendants, defendants provided constant false assurances that progress was being made in the litigation with State Bank, defendants failed to disclose material facts to them, and defendants misrepresented that State Bank "was at fault" for the damages they suffered.

¶ 25 In support of their claims, plaintiffs submitted Ray's 21-page affidavit, which contained many of the same facts as alleged in their complaint. Ray additionally maintained that because of his family's 35-to-40-year relationship with attorneys Rees and Narmont, he trusted

them and relied on them to protect plaintiffs' interests. Ray asserted he did not make a "greater inquiry" into the adverse results of the litigation with State Bank, *i.e.*, State Bank obtaining confessions of judgment and foreclosing on LCF's properties, because he knew "LCF was delinquent on some of the loans" and thought State Bank "had the right to do what it did." He maintained all defendant attorneys failed to advise him about defenses to State Bank's actions and that Germeraad never informed him that Rees and Narmont had been negligent. Ray asserted that he received assurances from all three attorneys that an agreement could be reached with State Bank such that the foreclosed properties would remain with his family. He averred that he did not realize until March 2020 "that it was not only [State Bank] who had wronged [him and his] family, but that [his] attorneys were professional[ly] negligent."

¶ 26        In March 2022, the trial court conducted a hearing on defendants' motions to dismiss and took the matter under advisement. In October 2022, the court made a docket entry, granting defendants' motions and stating as follows:

> "All defendants have filed requests pursuant to [section] 2-619 [of the Code], to dismiss Plaintiffs' claims as untimely. There is a two-year statute of limitations and the discovery rule applies. It is clear from the record, viewed in the light most favorable to Plaintiffs, that Plaintiffs knew or reasonably should have known of their injury and that it was wrongfully caused on or before [December 20, 2018]. The complaint, filed [December 28, 2020], was filed outside the statute of limitations."

In December 2022, the court's written order, dismissing plaintiffs' complaint with prejudice, was filed.

¶ 27        In January 2023, plaintiffs filed a motion to reconsider the trial court's grant of

defendants' motions to dismiss, arguing the court erred because a question of fact existed "as to whether a reasonable person would have known their harm was caused by attorney negligence within two years of the filing of the *** complaint." In April 2023, the court denied plaintiffs' motion, stating as follows:

"Plaintiffs contend that a reasonable finder of fact could conclude that the statute of limitations did not begin to run until March 2020 when a fifth attorney apprised Plaintiffs of the alleged malpractice. According to Plaintiffs, until this time, Plaintiffs as lay persons had no reasonable basis to believe anyone other than [State] Bank had treated them unfairly. This argument ignores two undisputed facts (1) that the Court, in its [summary judgment] order entered in the Fraudulent Transfer Case [o]n December 20, 2018, ruled in favor of [State] Bank and (2) that same day, Plaintiffs entered into a monetary settlement agreement with [State] Bank, relating to the [summary judgment] order. Therefore, by December 20, 2018, Plaintiffs were aware that the Fraudulent Transfer Case would be resolved either by Plaintiffs making the monetary settlement payment or by foreclosure of the properties. As of that date, Plaintiffs possessed sufficient information concerning their injury and its cause to put a reasonable person on inquiry to determine if actionable conduct existed, which triggered the statute of limitations."

¶ 28    This appeal followed.

¶ 29                                    II. ANALYSIS

¶ 30    On appeal, plaintiffs challenge the trial court's dismissal of their complaint on statute of limitations grounds, arguing the court erred in finding that the two-year statute of limitations began to run on December 20, 2018. Plaintiffs contend their complaint and Ray's

unrebutted affidavit establish that (1) their legal malpractice action was timely because it was filed within two years of the May 2019 dismissal of the fraudulent transfer case or (2) the question of when the statute of limitations began to run could not be determined as a matter of law because questions of fact existed with respect to that issue or because multiple conclusions could be drawn from the undisputed facts. Alternatively, plaintiffs argue that the court erred in failing to find that the doctrines of equitable estoppel and fraudulent concealment prevented defendants from raising a statute of limitations defense.

¶ 31                              A. Standard of Review

¶ 32          "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." (Internal quotation marks omitted.) *Strauss v. City of Chicago*, 2022 IL 127149, ¶ 54, 215 N.E.3d 87. Section 2-619(a)(5) of the Code provides for the involuntary dismissal of an action when it "was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2020).

¶ 33          "When deciding a motion based on section 2-619 of the Code, a court accepts all well-pleaded facts in the complaint as true and will grant the motion when it appears that no set of facts can be proved that would allow the plaintiff to recover." *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 11, 104 N.E.3d 1090. Pleadings and supporting documents should be construed "in the light most favorable to the nonmoving party." *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 24, 210 N.E.3d 1184. An order granting a section 2-619 motion to dismiss is subject to *de novo* review. *Lawler*, 2017 IL 120745, ¶ 11.

¶ 34               B. Statute of Limitations and the Discovery Rule

¶ 35          The statute of limitations for legal malpractice claims is set forth in section 13-214.3(b) of the Code, which provides as follows:

"An action for damages based on tort, contract, or otherwise *** against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within [two] years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2020).

The plain language of section 13-214.3(b) "incorporates the 'discovery rule,' which serves to toll the limitations period to the time when the plaintiff knows or reasonably should know of his or her injury." *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 10, 953 N.E.2d 415.

¶ 36        "Under the discovery rule a limitations period begins to run only when the plaintiff knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." (Internal quotation marks omitted.) *Morris v. Margulis*, 197 Ill. 2d 28, 35-36, 754 N.E.2d 314, 318 (2001). "Significantly, actual knowledge of the alleged malpractice is not a necessary condition to trigger the running of the statute of limitations." *Carlson v. Fish*, 2015 IL App (1st) 140526, ¶ 23, 31 N.E.3d 404. Also, having knowledge that an injury was wrongfully caused does not mean having knowledge of a specific defendant's negligent conduct or the existence of a cause of action. *Katz v. Hartz*, 2021 IL App (1st) 200331, ¶ 27, 195 N.E.3d 730.

¶ 37        Rather, "[a] person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Carlson*, 2015 IL App (1st) 140526, ¶ 23. When an injured party possesses the requisite information, the burden is on that "party to inquire further as to the existence of a cause of action." *Scheinblum v. Schain Banks Kenny & Schwartz, Ltd.*, 2021 IL App (1st) 200798, ¶ 25, 200 N.E.3d 818.

¶ 38        Further, "[t]he 'injury' in a legal malpractice claim is not a personal injury or the

attorney's negligent act." *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 17, 193 N.E.3d 1187. "Rather, it is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission." (Internal quotation marks omitted.) *Id.* "Thus, in a legal malpractice action, a client is not considered 'injured' unless and until he has suffered a loss for which monetary damages may be sought." *Id.* "If the damages are as yet 'speculative,' then the cause of action has not yet accrued, and the malpractice suit is premature." *Zweig v. Miller*, 2020 IL App (1st) 191409, ¶ 30, 182 N.E.3d 159. However, "[d]amages are speculative only if their existence is uncertain, not if the amount is uncertain or yet to be fully determined." *Id.*

¶ 39         "Normally, the discovery date will be a question of fact." *Morris*, 197 Ill. 2d at 36. However, " '[w]here it is apparent from the undisputed facts *** that only one conclusion can be drawn, the question becomes one for the court.' " *Id.* (quoting *Witherell v. Weimer*, 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874 (1981)).

¶ 40         Here, we find the pertinent facts are undisputed and lead to only a single conclusion—that no later than December 20, 2018, plaintiffs knew or reasonably should have known that they were injured, and their injury was wrongfully caused. In their complaint, plaintiffs alleged defendants were negligent in representing them in connection with their dealings with State Bank and the resulting litigation. However, by December 20, 2018, all such litigation had effectively concluded with (1) the entry of summary judgment in State Bank's favor in the fraudulent transfer case and (2) the settlement agreement with State Bank. Prior to that date, State Bank had obtained confessions of judgment against LCF relative to the five loans it had extended. It also obtained judgments of foreclosure with respect to the properties that were used as security for the loans.

¶ 41         The trial court's summary judgment order in the fraudulent transfer case explicitly

found no genuine issue of material fact existed with respect to State Bank's claim that LCF's transfer of property to the Trust "was made with actual intent to hinder, delay and defraud" State Bank as a creditor of LCF. It declared the December 2014 transfer of property from LCF to the Trust "void and of no legal effect." The court's order also authorized State Bank to foreclose judgment liens against the transferred property. The settlement agreement between LCF, the Trust, and State Bank—entered into the same day as the summary judgment order—provided for LCF and the Trust to make a settlement payment to State Bank. Upon receipt of the settlement payment, State Bank agreed to file a motion to vacate the summary judgment order and dismiss the litigation with prejudice.

¶ 42        Accordingly, as the trial court found below, by December 20, 2018, plaintiffs were aware that LCF's transfer of property to the Trust, actions allegedly taken on the advice and with the assistance of attorneys Rees and Narmont, were deemed fraudulent. They also knew that resolution of the fraudulent transfer case required either (1) a settlement payment to State Bank pursuant to the settlement agreement or (2) foreclosure of the properties that were the subject of the fraudulent transfer litigation. Based on these circumstances, plaintiffs had sufficient information on December 20, 2018, of both an injury and its cause to require further investigation into whether there was actionable conduct. As a result, their complaint filed more than two years later on December 28, 2020, did not fall within the limitations period prescribed by section 13-214.3(b).

¶ 43        Plaintiffs argue, however, that their legal malpractice complaint was timely because it was filed within two years of May 2019, when the trial court dismissed the fraudulent transfer case pursuant to State Bank's unopposed motion to vacate. They contend May 2019 was when the fraudulent transfer case concluded, not December 20, 2018, and cite case authority for the

proposition that " 'a cause of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney.' " *Warnock v. Karm Winand & Patterson*, 376 Ill. App. 3d 364, 369, 876 N.E.2d 8, 13 (2007) (quoting *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349, 356, 703 N.E.2d 473, 479 (1998)). They also argue that the summary judgment order could not have put them on notice of an injury or its cause because it later became "a nullity" after it was vacated following State Bank's unopposed motion to vacate.

¶ 44          Clearly, however, it was on December 20, 2018, that plaintiffs received an adverse judgment in the fraudulent transfer case and entered into the settlement agreement. State Bank's later filing in May 2019 of the unopposed motion to vacate was a function of the settlement agreement and did not alter the fact that the litigation was resolved in State Bank's favor. It was on December 20, 2018, when both the summary judgment order and the settlement agreement were entered, that plaintiffs had sufficient information regarding their injury and its cause to require them to investigate further.

¶ 45          Additionally, we find no support in the record for plaintiffs' suggestion on appeal that they may have been unaware of what occurred in the fraudulent transfer case on December 20, 2018. The record shows that, at that time, LCF and the Trust were represented in the fraudulent transfer case by attorney Williams, who is not a defendant in the present litigation. Moreover, plaintiffs' complaint contains no allegation that Williams failed to communicate any information to plaintiffs, or that plaintiffs were unaware of how the fraudulent transfer case was being resolved. Ray similarly made no such claims in his affidavit and, in fact, acknowledged discussing the settlement agreement with Williams.

¶ 46        Plaintiffs also argue on appeal that the record supports a finding that they did not have sufficient information about their injury or its cause until March 2020, when Ray was informed by another attorney that defendants had potentially been negligent. They contend that as laypersons, they were "presumptively uninformed as to what constitutes malpractice." Certainly, the allegations of the complaint and Ray's affidavit support a finding that plaintiffs had *actual* knowledge of defendants' alleged malpractice in March 2020 after consulting with a new attorney. However, as noted above, "actual knowledge of the alleged malpractice is not a necessary condition to trigger the running of the statute of limitations." *Carlson*, 2015 IL App (1st) 140526, ¶ 23. Additionally, knowledge that an injury was wrongfully caused does not mean knowledge of a specific defendant's negligent conduct or the existence of a cause of action. *Katz*, 2021 IL App (1st) 200331, ¶ 27.

¶ 47        In this instance, the record reflects plaintiffs had concerns about attorneys Rees and Narmont well before the fraudulent transfer case concluded. Ray's affidavit shows that although Rees and Narmont were purportedly representing plaintiffs' interests in the foreclosure action with State Bank, Ray did not learn that the properties at issue in the case were sold until weeks after the sale dates. Significantly, his knowledge of the sales came from outside sources rather than from defendant attorneys. Ray represented he was "very concerned," spoke with all three defendant attorneys, and was assured that "negotiations with [State] Bank were still progressing" and an agreement with the bank "would be worked out" so that the sold properties could remain with Ray's family. However, the allegations in plaintiffs' complaint indicate that by late 2016, Rees was allowed to withdraw from the fraudulent transfer case and Ray hired attorney Williams "in an attempt to mitigate the damages caused by Rees and Narmont." Plaintiffs' allegation suggests their awareness in 2016 that they suffered harm because of Rees's and Narmont's actions. Additionally,

as discussed, on December 20, 2018, the fraudulent transfer case was resolved in State Bank's favor based upon a finding that the transfer of property from LCF to the Trust, action plaintiffs allegedly took on the advice of Rees and Narmont, was fraudulent. Additionally, the trial court's summary judgment order authorized State Bank to foreclose judgment liens against additional properties owned by plaintiffs. Accordingly, while plaintiffs may not have had actual notice of the alleged malpractice until March 2020, ample evidence supported the court's finding below that by at least December 20, 2018, they possessed sufficient information about both an injury they sustained and its cause to reasonably require them to inquire further into whether actionable conduct was involved.

¶ 48    Under the circumstances presented, we find no error in the trial court determining, as a matter of law, that the statute of limitations began to run on December 20, 2018. Plaintiffs' legal malpractice complaint, filed over two years later on December 28, 2020, was untimely and, thus, properly subject to dismissal on statute of limitations grounds.

¶ 49    C. Equitable Estoppel and Fraudulent Concealment

¶ 50    On appeal, plaintiffs also contend that under theories of equitable estoppel and fraudulent concealment, defendants should have been barred from asserting a statute of limitations defense. Specifically, they contend any delay in their discovery of defendants' wrongful conduct was due to "the lack of material advice" given to them by defendants. Plaintiffs complain that because they "were not told about remedies and defense[s] to the actions of [State] Bank, were told settlement with [State] Bank was the only viable option, and not told about the negligent conduct of the other attorneys, [they] lacked sufficient information not only to resolve their disputes with [State] Bank but to realize *** defendant attorneys also cause[d] them wrongful injury."

¶ 51        For either the doctrine of equitable estoppel or fraudulent concealment to apply, "a party must generally show that the defendant said or did something to lull or induce plaintiff to delay the filing of his claim until after the limitations period has run." (Internal quotation marks omitted.) *Carlson v. Michael Best & Friedrich LLP*, 2021 IL App (1st) 191961, ¶ 56, 186 N.E.3d 478. To establish estoppel, the party claiming estoppel must demonstrate the following:

> " '(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when that party decided to act, or not, upon the representations; (4) the other person intended or reasonably expected that the party claiming estoppel would determine whether to act, or not, based upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof.' " *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 21-22, 885 N.E.2d 999, 1011 (2007) (quoting *DeLuna v. Burciaga*, 223 Ill.2d 49, 82-83, 857 N.E.2d 229, 249 (2006)).

"It is not necessary that the defendant intentionally mislead or deceive the plaintiff." *Id.* at 22. "All that is required is that the plaintiff reasonably relied on the defendant's conduct or representations in delaying suit." *Id.*

¶ 52        "To claim the benefit of equitable estoppel, a plaintiff must have had no knowledge or means of knowing the true facts within the applicable limitations period." *Doe v. Hastert*, 2019 IL App (2d) 180250, ¶ 40, 133 N.E.3d 1249. Additionally, "it is well-established that the basis of

a legal malpractice action also cannot constitute the grounds for equitable estoppel; there must be some misrepresentation by the defendant that the plaintiff relied on to his or her detriment to prevent the filing of a legal malpractice action." *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 38, 103 N.E.3d 398.

¶ 53         "Under the fraudulent concealment doctrine, the statute of limitations will be tolled if a plaintiff pleads and proves that fraud prevented discovery of a cause of action." *Id.* ¶ 37. With respect to the fraudulent concealment of an action, section 13-215 of the Code states as follows:

> "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within [five] years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2020).

¶ 54         "A plaintiff seeking to avail itself of this provision to toll the statute of limitations must show that the defendant engaged in affirmative acts or representations designed to prevent discovery of the cause of action or to induce the plaintiff into delaying the filing of its claim." *J.S. Reimer, Inc. v. Village of Orland Hills*, 2013 IL App (1st) 120106, ¶ 51, 990 N.E.2d 831. Silence may also amount to fraudulent concealment when "a fiduciary, trust, or other confidential relationship exists between the plaintiff and the defendant." *Doe No. 2 v. Boy Scouts of America*, 2016 IL App (1st) 152406, ¶ 82, 66 N.E. 2d 433. In particular, "a fiduciary who is silent, and thus fails to fulfill his duty to disclose material facts concerning the existence of a cause of action, has fraudulently concealed that action, even without affirmative acts or representations." (Emphasis omitted.) *DeLuna*, 223 Ill. 2d at 77.

¶ 55         Here, in arguing that equitable estoppel and the fraudulent concealment statute

should apply, plaintiffs rely on the same factual circumstances that form the basis of their legal malpractice claims. In particular, they complain that defendants failed to tell them about remedies and defenses to the litigation involving State Bank, represented that settlement with State Bank was the only viable option, and did not tell them about the negligent conduct of the other attorneys. However, plaintiffs were injured on December 20, 2018, when an adverse judgment was entered against them in the fraudulent transfer case, and they settled with State Bank. Plaintiffs do not identify anything that prohibited their discovery of such circumstances, nor do they otherwise identify any misrepresentation by defendants that prevented them from filing their malpractice action within two years after that discovery date. Neither equitable estoppel nor section 13-215 of the Code apply under such circumstances.

¶ 56 Moreover, equitable estoppel also does not apply where "the 'lulling' period induced by a defendant ends with ample time remaining before the expiration of the statute of limitations." *Moore v. A.H. Robins Co., Inc.*, 167 Ill. App. 3d 19, 25, 520 N.E.2d 1007, 1011-12 (1988). Similarly, section 13-215 of the Code does not apply "where the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period." (Internal quotation marks omitted.) *J.S. Reimer*, 2013 IL App (1st) 120106, ¶ 51.

¶ 57 In this instance, plaintiffs assert that in March 2020, when consulting with an attorney, they obtained actual knowledge of their cause of action resulting from defendants' alleged negligence and effectively discovered the fraudulent concealment of their legal malpractice claims. At that point, approximately nine months remained of the two-year limitations period which began on December 20, 2018. We find nine months provided plaintiffs with ample time within which to file their legal malpractice complaint, and, on appeal, plaintiffs do not suggest

otherwise. Under such circumstances, plaintiffs may not rely on either equitable estoppel or section 13-215 of the Code. See *County Line Nurseries & Landscaping, Inc. v. Kenney*, 2020 IL App (1st) 200615, ¶ 28, 179 N.E.3d 930 (finding the fraudulent concealment statute did not apply where, despite an attorney's alleged concealments, the plaintiffs gained sufficient knowledge of an injury caused by the attorney's malpractice and had ample time to file a complaint within the two-year limitations period); *Smith v. Cook County Hospital*, 164 Ill. App. 3d 857, 864, 518 N.E.2d 336, 341 (1987) ("Six months was a reasonable time within which [the plaintiff] could have filed his complaint after the alleged fraud was discovered.").

¶ 58        Here, as stated, the trial court committed no error in finding plaintiffs' legal malpractice complaint was untimely filed. We also find the court committed no error in failing to apply the doctrines of equitable estoppel or fraudulent concealment to bar defendants' statute of limitations defense. Finally, for all the reasons expressed, the court did not err in denying plaintiffs' motion to reconsider its dismissal of their complaint.

¶ 59                                III. CONCLUSION

¶ 60        For the reasons stated, we affirm the trial court's judgment.

¶ 61        Affirmed.